**ROSENTHAL & ROSENTHAL, INC.,**
Plaintiff,

v.

**AETNA CASUALTY AND SURETY COMPANY, the Foreign Credit Insurance Association, John C. Paige Company, et al., Defendants.**

**No. 66 Civil 267.**

United States District Court
S. D. New York.

Sept. 20, 1966.

Ballon, Stoll & Shyman, New York City, for plaintiff; Ronald S. Itzler, New York City, of counsel.

Watters & Donovan, New York City, for defendant Foreign Credit Ins. Ass'n; James B. Donovan, Thomas D. Wellington, Elizabeth A. Palewski and James G. Simms, New York City, of counsel.

Jacobs, Persinger & Parker, New York City, for defendants John C. Paige Co., John C. Paige & Co., Inc., Anthony Faunce and Thomas P. Carrigan; Irving Parker and Jay N. Feldman, New York City, of counsel.

PALMIERI, District Judge.

This is an action by a commercial factor, in its capacity as assignee of an insured, to recover for a loss allegedly sustained within the terms of a contract of insurance made with The Foreign Credit Insurance Association (F.C.I.A.) and the Export-Import Bank of Washington (Exim Bank). F.C.I.A., allegedly an association of and representative for a number of insurance companies named as defendants and denominated "insurers", is alleged to be Exim Bank's agent for the issuance of the contract of insurance sued on. Exim Bank concededly is a wholly-owned Government corporation.

Alternatively, recovery is sought against John C. Paige & Company, Inc., John C. Paige Company, Anthony Faunce, Edward Wendell and Thomas P. Carrigan (the insurance brokers), on the basis, allegedly, that the failure to compensate for the loss was due to the fraud, negligence or breach of contract of these defendants or some of them.

The defendant insurance brokers have moved for an order dismissing the amended complaint as against them on the ground that the Court lacks jurisdiction over the subject matter with respect to such claims, Rule 12(b) (1), Fed.R.Civ.P. For the reasons hereinafter set forth, it is the conclusion of this Court that jurisdiction does not exist and that the motion must be granted.

Concededly, there is no diversity jurisdiction inasmuch as the plaintiff and the defendant John C. Paige & Company, Inc., are both New York corporations engaged in business in the State of New York. Concededly, also, the Court has subject matter jurisdiction over the defendant Exim Bank, a corporation incorporated under an Act of Congress and wholly owned by the United States Government.[1]

## The Amended Complaint

The amended complaint contains four counts. The first count is directed against F.C.I.A., Exim Bank and the defendant insurance companies, 30 in number, constituting the association of insurers for which F.C.I.A. is the representative. The second, third and fourth counts are directed against the insurance broker defendants and contain no allegations involving F.C.I.A., Exim Bank or the 30 insurance companies except by way of *pro forma* reiteration.

The first count alleges, in substance, that the plaintiff, as assignee of South Leather Co., Inc., the insured, is entitled to the proceeds of the insurance policy purporting to indemnify the insured or its assignees against the nonpayment for goods sold to foreign buyers; that during the effective period of the policy, and within its terms, a foreign buyer failed to make payment for goods sold and delivered by the insured, thereby causing a loss within the coverage of the policy in the amount of $15,000. This amount, with interest, is sought against the defendant insurance companies, Exim Bank, and F.C.I.A., as its agent.

The second count alleges that after the loss in question was sustained, plaintiff retained John C. Paige & Company, Inc. (Paige) and John C. Paige Company (the Company) as its brokers to collect all the sums due plaintiff under the policy; and that Paige, the Company, and the individual defendants were negligent in representing the plaintiff in their dealings with the defendant F.C.I.A. by failing to pay premiums due on the policy, by failing to file certain reports required by the policy, and by failing to file a proof of loss as required by the policy. It is further alleged that, as a result of the negligence of Paige, the Company, and the individual defendants in representing the plaintiff, F.C.I.A. and Exim Bank have refused payment resulting in plaintiff's damage in the sum of $15,000.

The third count is directed against Paige, the Company, and the individual defendants, and alleges the same derelictions with respect to their improper representation of the plaintiff in their dealings with F.C.I.A. but formulates a claim of redress on the basis of actionable misrepresentations to the plaintiff, as a result of which plaintiff was allegedly induced to refrain from inquiring as to whether the premiums had been paid and as to whether the overdue reports and proofs of claim were or had to be filed, all to the plaintiff's damage in the sum of $15,000.

The fourth count is directed against the defendants Paige and the Company and is based upon the same alleged derelictions already referred to—the failure to pay premiums and the failure to file reports and a proof of loss, but is couched in terms of a violation of their contractual obligations as brokers. It alleges that Paige and the Company failed to perform certain acts incumbent upon them and failed to exercise due care and diligence with respect to such performance and that, as a result of such failure, the plaintiff has been unable to obtain payment on its insurance claim, all to the plaintiff's damage in the sum of $15,000. There are *pro forma* repetitions of the prior allegations of each count by way of introduction to the express allegations of each of counts 2, 3 and 4.

In summary, therefore, the causes of action against the insurance broker defendants are based upon allegations of negligence, fraud and breach of contract.

---

1. 28 U.S.C. § 1331(a); 28 U.S.C. § 1349; and 12 U.S.C. § 635 et seq., discussed infra.

It may be noted in passing that the defendant F.C.I.A. has filed an answer containing what amounts to a general denial in addition to eight affirmative defenses. Fn. 2 In essence, F.C.I.A. alleges that the plaintiff, its assignor, and the persons purportedly acting in behalf of either of them, including, presumably, the insurance broker defendants, have failed to fulfill conditions of the insurance policy precedent to the obligation of payment by the insurers. The defendant Exim Bank has adopted the answer of defendant F.C.I.A. *in toto.*

### The Contract of Insurance

The precise contract of insurance entered into by plaintiff's assignor does not appear to be before the Court. A specimen contract is attached to the amended complaint and marked Exhibit A. Defendant F.C.I.A. has denied in its answer that it is the complete contract and has requested leave in its answer to refer to the original for all the terms and conditions thereof.

The type of insurance involved is denominated export credit insurance and is so labelled at the top of the specimen policy. Just beneath, and in letters of almost equal size, appear the full names of F.C.I.A. and Exim Bank. It was a new and unique type of insurance made available by federal statute which permitted Exim Bank to insure against this type of loss. 12 U.S.C. § 635 et seq. A special rider attached to the specimen contract apparently covers the transaction with the foreign buyer whose default precipitated the claim for indemnity. Apart from the type of risks referred to (export credit and political risks), the policy has all the usual ear-marks of an insurance contract, i. e., clauses with respect to limitations of liability, exclusions, proof and payment of claims, notices of claims, etc.

### The Issues Presented

The motion of the insurance broker defendants to dismiss the amended complaint as against them thus squarely presents the question whether this Court has jurisdiction over the subject matter of the action as it relates to these defendants either because (1) the claims asserted against the brokers arise substantially under federal law or, if they do not, (2) under the pendent jurisdiction doctrine.

### Federal Question Jurisdiction

In asserting that its cause of action arises under an act of Congress, the plaintiff has invoked the general original jurisdiction of federal question cases first extended to the lower court of the federal system by the Act of March 3, 1875, Section 1, 18 Stat. 470, and which has served substantially unchanged as Section 1331[2] of the 1948 Judicial Code. Modern commentators seem agreed that today, with the expanding scope of federal legislation, the exercise of power over cases of this sort constitutes one of the major purposes, if not, indeed, the most important function of the federal court system.[3]

The impressive and voluminous briefs submitted by the parties demonstrate that it is not always easy to determine the precise circumstances under which civil actions qualify for district court adjudication as "federal question" cases, those arising under the Constitution, laws, or treaties of the United States.

**2.** 28 U.S.C.A. § 1331(a), as amended, reads: The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

**3.** Quoted from ALI, Study of the Division of Jurisdiction between State and Federal Courts, Commentary–General at 38 (Tent. Draft No. 4, 1966) citing: Mishkin, The Federal "Question" in the District Courts, 53 Col.L.Rev. 157 (1953); Forrester, The Nature of a "Federal Question," 16 Tul.L.Rev. 362 (1942); Friendly, In Praise of Erie and of the New Federal Common Law, 19 Record of N.Y.C.B.A. 64 (1964); cf. Frankfurter, Distribution of Judicial Power between United States and State Courts, 13 Corn.L.Q. 499, 515 (1928).

628

One rule not questioned to this day is that the federal question must appear from the plaintiff's statement of his claim. Gold-Washing & Water Co. v. Keyes, 96 U.S. 199, 24 L.Ed. 656 (1878); State of Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894); Louisville & Nashville R. R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); ALI, Study of the Division of Jurisdiction between State and Federal Courts, Commentary § 1311 at 45 (Tent. Draft No. 4, 1966). An examination of the plaintiff's allegations in the second, third and fourth counts of the complaint directed against the insurance broker defendants indicates that they were retained, after the alleged loss was sustained, to collect, as plaintiff's brokers, the sum allegedly due plaintiff on the policy. The allegations of the alleged derelictions in failing to obtain these sums for plaintiff rest essentially upon a contractual relationship between plaintiff and the insurance brokers. This is so notwithstanding the references to misrepresentation and negligence. They are but variations of the same theme—the plaintiff's assertion that the moving defendants failed to perform their duties as brokers and consequently are responsible to plaintiff in damages. The repeated references by plaintiff to the sum of $15,000 as the amount of its loss under the policy and as the amount of the damages sought from the brokers, emphasizes the essentially contractual nature of plaintiff's claim against the insurance brokers.

The recent decision of the Second Circuit in T. B. Harms Company v. Eliscu, 339 F.2d 823 (2d Cir. 1964), offers guidance in this case. The complaint in *Harms* was couched in terms of copyright infringement but the hard core of plaintiff's claim was one of title to an interest in the renewal terms of four musical compositions. In concluding that the ascertainment of the true ownership of copyright interests was not enough to sustain subject matter jurisdiction, the Court's discussion provides pathways to the decision here. The Court stated, at p. 828: "Mindful of the hazards of formulation in this treacherous area, we think that an action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, * * * or asserts a claim requiring construction of the Act, * * * or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." The Court pointed out that both with respect to the general grant of federal question jurisdiction now contained in 28 U.S.C. § 1331 and with respect to the statutory jurisdiction over patents and copyrights, disputes as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law were matters of so little federal significance that subject matter jurisdiction should not be exercised. In reaching this conclusion the Court considered the possible presence of a dominant federal interest as a basis for asserting jurisdiction in accordance with the doctrine taken from Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). In the *Clearfield Trust* case, the Supreme Court suggested that, notwithstanding the absence of an express federal statute, if federal interest is dominant, federal law may govern what would otherwise appear to be an issue of state law. But the Court in *Eliscu* found no dominant federal interest at stake of the kind that would warrant application of the *Clearfield Trust* doctrine. Similarly, in United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), the Supreme Court held that a disaster loan contract made by the Small Business Administration, pursuant to 15 U.S.C. § 636(b), with a Texas resident and his wife was subject to the Texas law of coverture since no overriding federal interest required displacement of the state rule so as to permit the collection of a deficiency from the wife's separate property.

■ A persuasive parallel to the *Eliscu* case is suggested by the facts alleged here by the plaintiff. His quarrel with the insurance brokers is only incidental to the insurance policy—its concern with any federal interest regarding the insurance coverage is collateral and minimal. There is no direct or substantial reliance[4] on federal law in asserting these insurance broker claims. Cf. Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). The discernible federal element, the federal statutes providing for the type of insurance coverage involved, (12 U.S.C. § 635(c) (1)–(4)) is, so far as the insurance brokers are concerned, only collaterally connected with their relationship to the plaintiff.

The sections of 12 U.S.C. cited by plaintiff (§§ 635, 635a–635i) create Exim Bank and authorize it to join with private insurers in issuing foreign credit insurance of the type involved in this case.[5] The powers, functions, management, and financial structure of Exim Bank are delineated by the statutes. Insofar as their insurance aspect is concerned, they are couched in the broadest possible terms and enable the Exim Bank to reinsure with any insurance company in the United States. No cause of action is expressly created or provided for by these statutory provisions. While the plaintiff is correct in stating that 28 U.S.C. § 1349 [6] (Government ownership of Exim Bank), read together with 28 U.S.C. § 1331(a), note 2, supra, provide the basis for jurisdiction with respect to Exim Bank, this conclusion does not supply a basis for the assertion of federal jurisdiction with respect to the insurance broker defendants. As to them, neither statute applies. Their liability, if any, is predicated upon an undertaking to the plaintiff which was essentially contractual and which came into being, if at all, after the contract of insurance was entered into and after the alleged loss was sustained. While it may be said that the federal interest is dominant with respect to the actions of Exim Bank within the context of the doctrine of Clearfield Trust Co. v. United States, supra, there is no persuasive basis for concluding that any legal problem posed by

4. 28 U.S.C. § 1311(a) as proposed by The American Law Institute, see Study of the Division of Jurisdiction between State and Federal Courts, § 1311 at 5 (Tent. Draft No. 4, 1966), provides:

§ *1311. General federal question jurisdiction; original jurisdiction; exclusive jurisdiction*

(a) Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction without regard to amount in controversy of all civil actions in which the initial pleading sets forth a substantial claim arising under the Constitution, laws, or treaties of the United States.

This proposed provision is stated to be declaratory of existing law, under the construction the courts have developed of 28 U.S.C. § 1331(a), except that no amount in controversy is required.

5. Subdivisions (c) (1), (2), (3) and (4) of 12 U.S.C. § 635 are prefaced by the terms "Insurance functions; aggregate amount, restriction; reinsurance; terms and conditions". Subdivisions (2) and (3) provide as follows:

(2) Insurance may be provided pursuant to this subsection only to the extent that it cannot be obtained on reasonable terms and conditions from companies authorized to do an insurance business in any State of the United States and to the extent that it cannot be obtained from any agency of the United States Government providing marine or air war-risk insurance.

(3) In providing insurance pursuant to this subsection, the Bank may reinsure in whole or in part any company authorized to do an insurance business in any State of the United States or may employ any such company or group of companies to act as its underwriting agent in the issuance of such insurance and the adjustment of claims arising thereunder.

6. 28 U.S.C. § 1349 provides that:

The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock.

the complaint with respect to the defendant insurance brokers is embraced by a federal interest suggested by the statutes which created Exim Bank.

The plaintiff's reliance upon American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, 19 A.L.R.2d 738 (1951), is misplaced. This decision does not touch the jurisdictional problem posed here. The decision was reached in another context—removal under Section 1441(c) of the 1948 Judicial Code, a matter which is irrelevant to the issues presented by this case.[7]

In sum, the claim against the brokers arises wholly under state law; and even if the insurance contract requires construction of the federal statutes which create the insurance functions of Exim Bank (see note 5, supra), a point which is not germane to the jurisdictional question presented here, the liability of the brokers is predicated on their subsequent undertaking to the plaintiff under circumstances in which there is no dominant federal interest justifying the assertion of jurisdiction by this Court.

### Pendent Jurisdiction

There now remains for decision the further contention that adjudication of the claims asserted against the insurance broker defendants is appropriate under the doctrine of pendent jurisdiction. The conclusion reached so far compels a negative answer with respect to this aspect of the case.[8] None of the claims against the brokers falls within 28 U.S.C. § 1331(a), see note 2, supra; absent one qualifying claim there is nothing to which the others may "pend".

■ The doctrine of pendent jurisdiction may be invoked only where the claim based upon a substantial federal question is made against the same defendants with respect to whom non-federal claims are asserted. Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1964), cert. denied, 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed. 2d 557 (1965); New Orleans Public Belt R. R. v. Wallace, 173 F.2d 145 (5th Cir. 1949); Maher v. Newtown Creek Towing Co., 190 F.Supp. 933 (S.D.N.Y. 1961); Gautreau v. Central Gulf S.S. Corp., 255 F.Supp. 615 (E.D.La.1966).

In the *Wojtas* case, an action was brought against police officers under federal civil rights statutes and against the Village of Niles under Illinois state law for damages for false arrest and imprisonment, malicious prosecution, and

---

**7.** The *Finn* case was a suit by a Texas citizen against two foreign insurance companies and their local agent, claiming alternative recovery for fire loss on one or the other of the policies involved, or that the agent was liable for having failed to keep the property insured. The insurers removed to the federal court, relying on Section 1441(c). After trial to a jury, judgment was entered for the amount of the loss against one of the insurance companies, while judgment was entered for the other company and the agent. The company against which judgment had been entered then sought to have judgment vacated on the ground that the action had been improperly removed, and that the federal court was without jurisdiction. This contention was upheld in the Supreme Court. In reaching this conclusion, the Court concluded that: "[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." 341 U.S. at 14, 71 S.Ct. at 540. The plaintiff has relied heavily upon this language

here, urging that the single wrong done to him, i. e., the failure to pay his assignor's loss under the insurance policy, constitutes in effect a single claim against all defendants, permitting suit against all of them in federal court. This case cannot be construed to support such a conclusion. The ruling of the Supreme Court was that the case had been improperly removed to the federal court and should be remanded to the Texas courts. But, though the losing insurer won his point, he lost his case. On remand, plaintiff voluntarily dismissed as to the non-diverse party (the Texas agent) and the Fifth Circuit held that judgment could again be entered against the insurer on the basis of the former trial. Finn v. American Fire & Casualty Co., 207 F.2d 113 (5th Cir. 1953), cert. denied, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954).

**8.** See generally, United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts, 62 Col.L.Rev. 1018 (1962).

assault. Because the three counts with respect to the Village were based on Illinois law in a complaint otherwise based entirely on alleged violations of federal civil rights statutes and the Fourteenth Amendment to the federal Constitution, the district court entered a final judgment dismissing the three counts directed against the Village. On appeal from this dismissal, the Seventh Circuit affirmed. It held that, there being no diversity between the plaintiffs and the Village, the presence of subject matter jurisdiction with respect to the defendants other than the Village did not supply the Court with subject matter jurisdiction of the counts against the Village. The Court said, 334 F.2d at p. 799:

> We hold that the mere incorporation of counts Three, Four, and Five, based upon Illinois law, in a complaint otherwise based entirely upon alleged violations of a federal statute and the fourteenth amendment to the constitution of the United States, does not give the district court jurisdiction of those three counts.

This decision was reached despite the fact that all of the claims made in the case were based upon the same set of facts.

 It follows that pendent jurisdiction cannot be asserted here against insurance broker defendants.

### Conclusion

For the reasons stated above, federal jurisdiction with respect to the moving defendants cannot be sustained either directly under 28 U.S.C. § 1331(a) or under the doctrine of pendent jurisdiction.

 The suggestion of the United States Attorney, who appears as attorney for Exim Bank, that diversity jurisdiction can be perfected by the dismissal of the suit against the non-diverse defendant, John C. Paige & Company,

Inc., cannot be entertained since there is no motion by plaintiff before this Court seeking such relief. See American Fire & Casualty Co. v. Finn, note 7, supra.

 An additional problem may also be created by the fact that if F.C.I.A. is an unincorporated association, as it appears to be, its citizenship is that of each of its components, United States Steelworkers v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), and hence no diversity would exist if any member is incorporated or has its principal place of business in New York.[9] F.C.I.A. has "conceded" federal jurisdiction in its brief. Since the Court must dismiss sua sponte if subject matter jurisdiction is absent, Mansfield C. & L. M. Ry. v. Swan, 111 U.S. 379, 4 S. Ct. 510, 28 L.Ed. 462 (1884), this Court holds that the action against F.C.I.A. is properly before this Court because the claim against it may require construction of the federal statutes conferring insurance functions on Exim Bank (12 U.S.C. § 635(c) (1)–(4)) and because of the strong likelihood of a dominant federal interest in the unique type of insurance involved.

The issue of sufficiency of process, sought to be raised by the moving defendants, need not be reached in view of the conclusion stated above. No opinion is expressed as to whether this issue, first alluded to in the two Parker affidavits of July 26th and July 27th, 1966, and the Wellington affidavit of July 27th, 1966, has been waived by failure to include it as a ground of the motion filed by the moving defendants under Rule 12 (b), Fed.R.Civ.P., on May 20, 1966, and made returnable on July 7, 1966. See Rule 12(g) and (h), Fed.R.Civ.P., as amended, 1966.

It follows, therefore, that the motion to dismiss must be granted. Submit order on notice.

9. In paragraph 6 of the amended complaint it is alleged that F.C.I.A. "was and still is an association of and representative for defendants," insurance companies, some thirty in number, which are listed. Among them are included at least two which appear to be of New York.