Charles HALL and Nathaniel Harvey, Petitioners and Plaintiffs,

v.

PACIFIC MARITIME ASSOCIATION, a non-profit corporation et al., Respondents and Defendants.

No. 42810.

United States District Court
N. D. California.
March 8, 1968.

John Eshelman Wahl and Griffith L. Humphrey, San Francisco, Cal., for plaintiffs.

Ernst, Munter & Hone, San Francisco, for defendant Pacific Maritime Ass'n and defendant Employers.

Gladstein, Leonard, Andersen & Sibbett, San Francisco, Cal., for defendants International Longshoremen's and Warehousemen's Union, a voluntary unincorporated Association, Local 10 of International Longshoremen's and Warehousemen's Union a voluntary unincorporated Ass'n, Harry Bridges, Howard Bodine, William Chester, Albert Bertani, Willie Christiansen, Carl Langben, J. Perez, and Frank Brown.

## MEMORANDUM AND ORDER RE MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

OLIVER J. CARTER, District Judge.

Before this Court are numerous and varied motions directed to Plaintiffs' Third Amended Complaint. Plaintiffs and defendants have filed affidavits and certain documents in support of their positions. For the purpose of defendants' motions the following facts must be assumed to be true either because they are contained in plaintiffs' allegations or affidavits, or they appear in the documents or affidavits of the defendants and are not denied by the plaintiffs.

Prior to the incidents complained of in this action, plaintiffs were members of Local 10 of the International Longshoremen's and Warehousemen's Union, hereinafter I.L.W.U., and were registered as Class A men under the collective bargaining agreement between the I.L.W.U. and the Pacific Maritime Association, hereinafter P.M.A., known as the Pacific Coast Longshore Agreement, 1961–1966.

On July 26, 1963 plaintiffs were working in the hold of a ship. A dispute arose over work procedure between the two plaintiffs and defendant Carl Langben, but the dispute was prevented from gaining momentum by the intercession of some fellow workers. When work was over for that day the parties were

on their way to the parking lot, and the dispute erupted again this time between plaintiffs on one side and defendants Frank Brown and Carl Langben on the other. The location of the dispute (whether on the dock or in the parking lot), and who started the dispute, and what physical blows were attempted and successful are the substance of the disagreement between the parties.

Following the incident described above, a complaint was filed before the Joint Port Labor Relations Committee (hereinafter referred to as the Joint Port Committee) charging plaintiffs with assault and battery with a deadly weapon. The Joint Port Committee is a body set up to investigate and adjudicate all grievances and disputes according to certain procedures under the Pacific Coast Longshore Agreement. Plaintiffs were notified of this complaint on July 31, 1963, and they were ordered to appear before the Joint Port Committee on August 6, 1963. In the meantime plaintiffs were suspended from further assignment of work on the water front.

On August 6, the Joint Port Committee met and heard evidence with regard to the complaint. Plaintiffs allege that numerous procedural improprieties attended this hearing, and these allegations will be enumerated below.

On August 13, the Joint Port Committee met and voted to deregister plaintiffs and notified plaintiffs of this action on August 16, 1963.

The act of deregistering plaintiffs precludes them from working on the water front on the west coast, resulting in great damage to plaintiffs.

Plaintiffs allege that the action taken by the Joint Port Committee was the result of a conspiracy among the union and management members of the Joint Port Committee at the meetings where action was taken on the complaint against plaintiffs. Also alleged to be in the conspiracy were Frank Brown and other union leaders. This conspiracy was designed arbitrarily to punish plaintiffs for offending the pride and dignity of Frank Brown. Frank Brown is alleged to have

the power to organize such a conspiracy because he is the brother of Archie Brown who has been a high I.L.W.U. leader.

Plaintiffs seek injunctive relief, declaratory relief, and damages.

Defendants have moved for summary judgment as to the entire action, for failure to state a claim upon which relief can be granted.

Plaintiffs argue that they have a cause of action under both § 301 of the Labor Management Relations Act (L.M.R.A.), 29 U.S.C. § 185, and § 101 and § 102 of the Labor-Management Reporting and Disclosure Act (L.M.R.D.A.), 29 U.S.C. § 411 and § 412.

With regard to the claim under L.M.R.D.A. plaintiffs argue that the action taken against them by the union violates their rights under the so-called Bill of Rights section of L.M.R.D.A., 29 U.S.C. § 411(a) (5). That section provides as follows:

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a) (5).

Plaintiffs argue that they have been "effectively expelled" from their union. What is meant by the term "effectively expelled" is not explained. Apparently if plaintiffs are not working, certain benefits which normally accrue from union membership (medical benefits) are not available. However, this Court finds it impossible to avoid the fact that what plaintiffs are complaining about is the loss of their jobs and not the loss of any union status. Indeed, any change in union status resulted from and followed after plaintiffs' deregistration. This Court holds that plaintiffs' damages, if any, have resulted from the loss of their jobs, and that renaming the action taken "effective expulsion" simply does not change the substance of their claim.

Another argument available, is that the action taken should be covered by the "* * * otherwise disciplined * *" clause of § 411(a) (5), in that what the union did was to enter into a conspiracy to deregister plaintiffs for their improvident conduct toward an elite union member, and thereby in effect disciplined them. Supporting this view of the action taken is the fact that apparently someone from the union initiated the complaint against plaintiffs, and union representatives participated in the decision by the Joint Port Committee.

The issue raised is whether § 411(a) (5) should be deemed applicable to a committee set up under a collective bargaining agreement in which a union has the duty and power to share in the enforcing of the on the job rules and discipline as it does in the present case. If an employer makes a decision to discharge an employee (or otherwise discipline him), and this decision has not in any way been influenced by the union, clearly the employer is not required to follow the procedure described in § 411(a) (5). It is union action, not management action, which is proscribed by the section.

In the present case the power of the union derives from what is a common form of grievance machinery, a committee with representatives of both management and labor sitting on it, each side having equal vote. The less usual aspect of the Joint Port Committee is the fact that it has original jurisdiction over registration and deregistration; e. g. the employer can take no action against an employee without going through the machinery of the Joint Port Committee. Additionally, if both management and union agree, the Joint Port Committee has final jurisdiction over these matters. Under this setup the union can initiate a complaint against one of its own members, and assuming that the employer does not care to oppose the union's course of action, there is the possibility for arbitrary and unfair conduct by the union against one of its members.

However, this Court can find nothing in § 411 which would indicate that Congress intended to write the procedural guarantees into grievance machinery set up under a collective bargaining agreement simply because the union participated in that grievance machinery and there was the possibility of abusing that power. Indeed all the subsections of § 411 provide for the protection of a member's rights within the internal labor organization framework, and none of them even refer to a collective bargaining agreement. Section 411(a) (1) protects union members' voting rights within their labor organization. Section 411(a) (2) protects union members' freedom of speech and assembly outside and inside the union hall. Section 411(a) (3) protects members' interests in the assessment of dues. Section 411 (a) (4) protects members' rights to sue their union. Section 411(b) provides as follows:

"Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect." 29 U.S.C. § 411(b).

None of these sections makes even an oblique reference to provisions of the collective bargaining agreement under which the members would be employed.

The rights of union members under the collective bargaining agreement are not left unprotected, for the union has a duty to provide each member with fair and impartial representation with regard to his rights under the collective bargaining agreement. This protection is discussed below in more detail.

Accordingly, this Court finds that § 411(a) (5) does not apply to the procedures used by the Joint Port Committee and that plaintiffs do not state a cause of action under 29 U.S.C. § 411 (a) (5). Defendants' motion for summary judgment as to that part of the Third Amended Complaint which attempts to state a cause of action under § 411(a) (5) will be granted.

With regard to the claim under 29 U.S.C. § 185 plaintiffs argue that the union and individual representatives and management have joined together in a

plot to deprive plaintiffs of their rights under the Pacific Coast Longshore Agreement.

Section 185 permits suit in federal court to enforce rights under collective bargaining agreements between an employer and a labor organization. An individual may bring suit under section 185 to enforce his rights under such a collective bargaining agreement. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). In addition to his rights under the contract an employee (union member) has the right to be represented fairly and without hostile discrimination by his exclusive bargaining representative. Both in its collective bargaining with the employer and its enforcement of the resulting collective bargaining agreement, the union must serve the interests of all members without hostility or discrimination toward any, exercise its discretion with complete good faith and honesty, and avoid arbitrary conduct. Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed. 2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed. 2d 370 (1964).

The allegation that management joined in an unfair and discriminatory plot to deregister plaintiffs alleges a breach of the collective bargaining agreement. The Joint Port Committee under § 17.125 of the Pacific Coast Longshore Agreement, 1961–1966, is charged with the duty "[t]o investigate and adjudicate any complaint against any longshoreman * * *." Section 18.1 of this agreement provides:

> "As an explicit condition hereof, the parties are committed to observe this Agreement in good faith. The Union commits the locals and every longshoreman it represents to observe this commitment without resort to gimmicks or subterfuge. The Employers give the same guarantee of good faith observance on their part." Section 18.1 of Pacific Coast Longshore Agreement, 1961–1966.

Thus the employers have agreed to adjudicate any complaint against a longshoreman in good faith. Such a plot as alleged by plaintiffs would be a breach of this promise.

Plaintiffs' allegation that the union initiated the complaint and joined in the action of the Joint Port Committee with unfair and arbitrary intent states a cause of action against the union which is the breach of its statutory duty to fairly represent its members in any such proceeding.

Defendants argued that plaintiffs' allegations of hostile discrimination are entirely conclusionary. A careful study of the Third Amended Complaint shows that many of the allegations that the defendants acted with hostile discrimination, et cetera, are conclusionary. However, there are certain specific allegations from which inferences can be drawn that such evil intent was present in the deregistration of plaintiffs.

Plaintiffs have alleged that they did not commit the acts with which they were charged before the Joint Port Committee. This is contrary to the findings of the Joint Port Committee. The decision of the Joint Port Committee is final if there was no breach of the collective bargaining agreement by the employer, and plaintiffs cannot be permitted to relitigate the merits of the dispute decided by the Joint Port Committee if there was no such breach. Humphrey v. Moore, 375 U.S. 335, 351, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Thus defendants argue that plaintiffs cannot relitigate the merits of the dispute before the Joint Port Committee by the simple expedient of making a conclusionary allegation that the contract was breached because the defendant acted with hostile intent. This issue need not be reached. Plaintiffs allege several facts which support the conclusionary allegations of hostile intent by the defendants.

Plaintiffs allege that the hearing was conducted before they had adequate time to prepare their defenses and that evidence against plaintiffs was heard outside their presence without opportunity to cross examine witnesses. While the

collective bargaining agreement does not set up any specific procedural guarantees at a hearing before the Joint Port Committee, if basic, procedural due process procedures were ignored in the case of plaintiffs' hearing, this fact would be relevant evidence on the issue of whether defendants acted with hostile intent.

Plaintiffs allege that while the collective bargaining agreement provides that three people should represent the union and that three should represent management only two people representing the union attended plaintiffs' hearing. The provision setting up the committee provides that:

"The parties shall establish and maintain, during the life of this Agreement, a Joint Port Labor Relations Committee for each port affected by this Agreement. * * * [This committee] shall be comprised of three or more representatives designated by the Union and three or more representatives designated by the Employers. Each side of the committee shall have equal vote." Section 17.11 Pacific Coast Longshore Agreement, 1961–1966.

■ An affidavit, uncontested by plaintiffs, has been filed with this Court by the defendants stating that it has been established by a long standing custom and practice that at meetings of the Joint Port Committee one representative from each side represents a quorum. With this contractual interpretation made by the parties it is apparent that there is no merit to plaintiffs' allegation. The interpretation does not do violence to the purpose of the agreement, in fact, it makes the agreement a more usable instrument in maintaining peace on the water front. This particular allegation fails to allege a breach of the contract. Otherwise defendants' motion to dismiss for failure to state a claim for relief should be denied.

■ Plaintiffs did make one additional allegation of a violation of the collective bargaining agreement which this Court finds to have no merit. Plain-

tiffs alleged that the Joint Port Committee lacked jurisdiction over the subject matter of the dispute between plaintiffs and Langben and Brown under the terms of the collective bargaining agreement. The Pacific Coast Longshore Agreement, 1961–1966, has the following provisions relating to this question of the jurisdiction of the Joint Port Committee:

"17.12 The duties of the Joint Port Labor Relations Committee shall be:
\* \* \* \* \* \*
"17.125 To investigate and adjudicate any complaint against any longshoreman whose conduct on the job, or in the dispatching hall, causes disruption of normal harmony in the relationship of the parties hereto or the frustration and/or violation of the provisions of the working or dispatching rules or of this agreement
\* \* \* \* \* \*
"17.82 The Joint Port Labor Relations Committee has the power and the duty to impose penalties on longshoremen who are found guilty of \* \* \* assault. \* \* \* "

Plaintiffs allege that the dispute occurred in the parking lot and therefore not "on the job". They argue that the Joint Port Committee cannot exercise its power of deregistration in cases of assault if the assault occurred in the parking lot. However, the documents and pleadings and affidavits on file in this case establish that it is not contested by plaintiffs that there was at least some relation between the incident which occurred on board the ship during work and the second incident which resulted in the deregistration which occurred somewhere between the ship and the parking lot. Under these facts it is the holding of this Court that the subject and situs of the incident were sufficiently related to the job that it fell within the jurisdiction of the Joint Port Committee. Accordingly, defendants' motion to strike will be granted as to the allegation that the Joint Port Committee had no jurisdiction under the collective bargaining agreement over the complaint which re-

sulted in plaintiffs' deregistration. The granting of this motion should not be read to foreclose plaintiffs from presenting evidence that a dispute this far from the ship was not normally treated as being on the job, or was not normally the basis for such a harsh punishment, for these matters may be relevant to the allegation of bad faith and hostility.

■ The individual defendants have moved to dismiss the complaint as to them. This motion will be granted. Neither the cause of action under 29 U.S.C. § 185, nor the cause of action based on the union's duty of fair representation provide any basis for a cause of action against individuals, other than in the situation of an employer who is an individual. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 248–249, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

■ Plaintiffs argue that a claim against the individual defendants is stated under a doctrine of civil conspiracy. Plaintiffs have cited no cases where a federal claim for civil conspiracy in the labor relations field has been recognized, and none is provided for by statute in the Labor Management Relations Act. The analogy drawn by plaintiffs to the civil conspiracy claims in the Civil Rights Act and anti-trust laws is very weak in view of the fact that in both the civil rights and anti-trust areas there are federal statutes which create a cause of action for civil conspiracy.

Plaintiffs suggest that it would be appropriate for this Court to "fashion", under the holding in Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), a doctrine of civil conspiracy to violate collective bargaining rights and to breach a union's duty to represent impartially individual union members. Plaintiffs' suggestion is ruled out by the holding in Atkinson v. Sinclair Refining Co., supra.

" 'We would undercut the Act and defeat its policy if we read § 301 narrowly' (Textile Workers Union of America v. Lincoln Mills, 353 U.S. at 456, 77 S.Ct. at 917, 918). We have already said in another context that § 301(b) at least evidences 'a congressional intention that the union as an entity, like a corporation, should in the absence of agreement be the sole source of recovery for injury inflicted by it' (Lewis v. Benedict Coal Corp., 361 U.S. 459, 470, 80 S.Ct. 489, 496, 4 L.Ed.2d 442). This policy cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both, in a separate count or in a separate action for damages for violation of a collective bargaining contract for which damages the union itself is liable." 370 U.S. at 249, 82 S.Ct. at 1325.

There is another reason why the cause of action given a union member against a union for its failure to represent him fairly and impartially is not appropriately extended to the other union members in their individual capacities. The duty of the union to give fair and impartial representation was placed on it because of its statutory power as an exclusive bargaining agent. Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). An official of a union in his individual capacity has no such power, and it follows that there need be no such correlative duty.

■ Finally, plaintiffs argue that a state claim for relief is properly before this Court under the doctrine of pendent jurisdiction. This is without merit. There can be no pendent jurisdiction of state claims against a person who is not properly a defendant in the federal claim. Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1964) cert. den. 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965); Rosenthal & Rosenthal, Inc. v. Aetna Cas. & Sur. Co., 259 F.Supp. 624, 630 (S.D.N.Y.1966); Gautreau v. Central Gulf S. S. Corp., 255 F.Supp. 615, 617–618 (E.D.La.1966).

Accordingly, the motion to dismiss the claim for relief under 29 U.S.C. § 185 against the individual defendants will be granted.

■ Doe defendants are not permitted in federal practice. Sigurdson v. Del

Guercio, 241 F.2d 480, 482 (9th Cir. 1956). Accordingly, paragraph III of the first claim for relief in the Third Amended Complaint will be struck.

■ Exemplary damages are not allowed in actions under 29 U.S.C. § 185. Local 20, Teamsters v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280, (1964). Local 20, Teamsters v. Morton, supra, also bars plaintiffs' argument that exemplary damages should be allowed under the doctrine of pendant jurisdiction.

"And insofar as punitive damages in this case were based on secondary activities which violated only state law, they cannot stand, because, as we have held, substantive state law in this area must yield to federal limitations. In short, this is an area 'of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law.'" Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165. Local 20, Teamsters v. Morton, supra, at 260–261, 84 S.Ct. at 1259.

Accordingly, the motion to strike that portion of the prayer that demands exemplary damages will be granted.

Defendants have moved to dismiss the Third Amended Complaint for failure to state separately different causes of action. In view of the dissection of plaintiffs' complaint made already by the Court, this motion will be denied.

The remaining motions are more appropriately the subject of a pretrial order.

Accordingly, it is ordered that summary judgment in favor of defendants as to that part of the Third Amended Complaint which attempts to state a cause of action under 29 U.S.C. § 411(a)(5) be, and the same is hereby granted;

It is further ordered that defendants' motion to dismiss that part of the Third Amended Complaint which alleges a cause of action under 29 U.S.C. § 185 be, and the same is hereby denied;

It is further ordered that the allegations that the Joint Port Committee lacked jurisdiction over the complaint before it against plaintiffs be, and the same are hereby stricken;

It is further ordered that the complaint as to the individual defendants Harry Bridges, Howard Bodine, William Chester, Albert Bertani, John Trupp, John Kucin, James Edwards, P. Holbrook, Willie Christiansen, Carl Langben, J. Perez, and Frank Brown be, and the same is hereby dismissed;

It is further ordered that the complaint as to the "Doe" defendants be, and the same is hereby dismissed;

It is further ordered that the plea for exemplary damages, be, and the same is hereby stricken;

It is further ordered that the allegations of the complaint with respect to the membership of the Joint Port Labor Relations Committee be, and the same are hereby stricken;

It is further ordered that defendants' motion to dismiss the complaint for failure to state separately different claims be, and the same is hereby denied.