**Matty CAMMARATA et al., Plaintiffs,**

v.

**ICE CREAM DRIVERS AND EMPLOYEES UNION, LOCAL 757, GOOD HUMOR CORP., et al., Defendants.**

**No. 76 C 1316.**

United States District Court,
E. D. New York.

Nov. 17, 1977.

Eisner, Levy, Steel & Bellman, New York City, by Lewis M. Steel (Arthur N. Read, New York City, of counsel), for plaintiffs.

Donovan, Leisure, Newton & Irvine, New York City, by Allan Freedman, New York City, for Good Humor defendants.

Cohen, Weiss & Simon, New York City, by Samuel J. Cohen, New York City (Richard L. Hartz, New York City, of counsel), for defendant Ice Cream Drivers and Employees Union, Local 757.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiffs are thirty ice cream vendors employed by Good Humor Corporation ("Good Humor") and represented by the Ice Cream Drivers and Employees Union, Local 757, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 757"). In their complaint, as amended, filed as a class action on behalf of all Good Humor ice cream vendors, plaintiffs seek to recover compensatory and punitive damages for claimed personal injuries and loss of earnings suffered as a result of: (1) Good Humor's alleged breach of the collective bargaining agreement with Local 757; (2) negligent and deceitful actions of Good Humor and its officers; and (3) Local 757's violation of its duty of fair representation in refusing to process plaintiffs' grievances against their employer. Good Humor and its affiliated defendants[1] have moved to dismiss the

1. These include several corporate officers and Thomas J. Lipton, Inc. ("Lipton"). The only allegation concerning Lipton is found in ¶ 31 of the complaint:

amended complaint and Local 757 has moved for summary judgment on the single claim against the union.

Plaintiffs claim that they suffered "physical and verbal abuse," mental and emotional distress, and a "disastrous and precipitous decline" in "sales and earnings" following the indictment of Good Humor on August 7, 1975 on charges of producing and marketing ice cream from its New York City plant with an illegally high bacteria count and falsifying records to conceal this activity.[2] Plaintiffs make no claim that they were given unmarketable ice cream products to sell but rather that, as the most visible representatives of Good Humor, they bore the brunt of the public outcry against Good Humor generated by the adverse publicity attending the indictment. This, they assert, caused customers not only to shun them but to threaten and assault them on their routes. After unsuccessful efforts to obtain compensation from Good Humor and assistance from Local 757, plaintiffs brought this lawsuit.

█ In their breach of contract claim, founded on § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), plaintiffs allege that Good Humor cut their territory and routes and changed their working conditions in violation of the collective bargaining agreement.[3]

The complaint discloses, however, that Good Humor did not actually cut plaintiffs' territory and routes or change their working conditions. Rather, plaintiffs complain of the "willful and fraudulent behavior of Good Humor which *effectively* deprived plaintiffs of access to [their] territory or routes" and changed their working conditions. Complaint, ¶ 55 (emphasis supplied). The public reaction to the indictment of Good Humor may have brought about changes in territories, routes and working conditions but only in the sense that plaintiffs and other Good Humor street vendors lost customers and were subjected to such insults, harassment and assaults that they were forced to curtail their work.

Such actions on the part of third parties cannot be ascribed to Good Humor. In the collective bargaining agreement, annexed as Appendix 1 to the complaint, Good Humor did not guarantee that external influences would not adversely affect the street vendors' sales and environment. For example, if physical conditions on a vendor's route deteriorate, customers move away and the remaining residents are unfriendly, the collective bargaining agreement does

"Upon information and belief, defendant Thomas J. Lipton, Inc. owns 100% of the capital stock of Good Humor Corporation, and exerts influence and control over the corporate decisions of Good Humor."
None of the claims in the complaint are directed against Lipton. If there were such claims, the bare allegation in ¶ 31 would not be sufficient, for only where a parent corporation has "complete domination of the finances and business practices" of its wholly-owned subsidiary will the parent be liable for the acts of the subsidiary. Fletcher, Cyclopedia of the Law of Private Corporations, § 6222 (1976 Supp.). In any event, the dismissal of the claims against Good Humor requires that claims against Lipton also be dismissed.

2. In April 1976, prior to the institution of this suit, Good Humor pleaded guilty to certain misdemeanor charges involving maintaining "false business records." All charges relating to the production and marketing of contaminated products were dismissed by the court.

3. Plaintiffs base their claim on the following provisions of the collective bargaining agree-

ment annexed as Appendix 1 to both the original and amended complaint:

"Except as the same may be specifically modified or changed by this Agreement, all benefits, privileges, and working conditions existing at the date of the Agreement more favorable to employees than may be required by the express terms of this Agreement shall continue in effect during the term hereof." Appendix 1, p. 4.

    \*   \*   \*   \*   \*   \*

"D. If after March 31st of any year, as the result of a cut in territory or new equipment being sent into any salesman's territory, the salesman complains of loss of income, the Company and the Union will review the matter and, if the claim is justified, it will be properly adjusted." Appendix 1, p. 16.

    \*   \*   \*   \*   \*   \*

"(19) There shall be no cuts made in any salesman's route as long as said employee remains on that route. Cuts may only take place if the salesman on route resigns, bids off route or agrees to such cut." Appendix 1, p. 25.

not require Good Humor to compensate the vendor for those changes.

Plaintiffs stress that their grievance concerning the effects of Good Humor's indictment would have been arbitrable under the labor agreement. See Appendix 1, Clause 12. At this point, however, the arbitrability of the grievance is irrelevant. Plaintiffs in this action at law seek damages for breach of a labor contract, not an order compelling arbitration. Thus it is solely for the court to decide whether on the facts alleged and accepted as provable the contract has been breached. In this case, the court concludes that the terms of the contract do not extend to the damage claims asserted by plaintiffs and that Good Humor could not be held to have breached the contract. Therefore, plaintiffs' alleged contract claim against the Good Humor defendants must be dismissed for failure to state a claim.

■ The complaint also contains negligence and fraud claims against Good Humor and its officers. Even if the federal claim against Good Humor had survived, it is unlikely that the State claims against its officers could have been maintained in this court. See *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). With the dismissal of the federal claim against Good Humor, the pendent State claims, lacking any independent basis for federal jurisdiction, must be dismissed in their entirety. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ The single *remaining* claim in the amended complaint charges Local 757 with violating its duty of fair representation as regards plaintiffs. Local 757 has moved for summary judgment dismissing that claim solely on the ground that plaintiffs have failed to exhaust their contractual and intra-union remedies. On that ground alone the union must fail, since it is apparent from the parties' Rule 9(g) statements and respective affidavits that genuine issues of

material fact are involved in the question of exhaustion of remedies. In addition, material issues of fact are also raised as to whether the union fairly represented these plaintiffs in their attempts to present their asserted grievance through union channels and have it *considered* according to prescribed union procedure.

First, contrary to the union's contention, plaintiffs did come forward with proof that they had unsuccessfully presented to their employer the grievance with which this action is concerned, thereby satisfying any requirement imposed by Section 9(a) of LMRA, 29 U.S.C. § 159(a). Four of the plaintiffs submitted affidavits describing specific occasions when they presented grievances to the branch manager and the district manager of Good Humor. They urged these Good Humor officials to protect the vendors from the public outcry by taking the trucks off the streets and compensating the vendors for their lost income, complaining that the lifting of daily rental fees under the union contract was totally inadequate. In making these requests, plaintiffs exhausted the remedy provided in the LMRA. The additional contractual remedy of arbitration was available only to the union and Good Humor.

Second, a material factual controversy clearly exists as to whether or not plaintiffs presented—or sought to present—a grievance through Local 757 channels.[4] The affidavit of Anthony Carlino, the union's vice president, avers categorically that they did not. Plaintiffs' affidavits, however, recite specific facts tending to show that repeated attempts were made by them to have the union take up their grievance with Good Humor. These culminated in a letter written by plaintiff Hyman Cohen, on behalf of all the plaintiffs, protesting the union's inaction. That letter evoked the following response to Cohen from the union's secretary-treasurer, Emanuel Parish:

"Dear Sir and Brother:

---

**4.** The collective bargaining agreement provides that

"[a]ny employee having a grievance shall present such grievance through the Shop

Steward within three (3) days to the appropriate supervisor or as provided in the Labor-Management Relations Act of 1947." *Id.*, Section 11(a).

"I am in receipt of your letter dated August 27, 1975 referring to 'bacteria scandal'.

"As you have been constantly reminded on several occasions you must follow procedure and check with your shop steward who has been well informed to date."

The apparent result of that advice was the following memorandum to plaintiffs, dated September 4, 1975, from Thomas Smith, the union shop steward referred to by Mr. Parish:

"The following is the information given to me by Mr. Manny Parish, Sec. Treas. of Local 757, I.B.O.T. in regard to the 'Bacteria Scandal' of the Good Humor Corporation to be relayed to the motorized vendors of the Braddock Avenue Branch:

"1. The Union cannot compensate the men because of lack of funds.

"2. There is nothing stipulated in the contract between Local 757 and the Good Humor Corporation to compensate the men for the loss of business.

"3. Mr. Parish evaded the subject of mental and physical harassment of the vendors.

"4. Mr. Parish never replied to the question pertaining to the daily rental fee of $5.50 for the month of September."

To overcome the factual questions so clearly revealed above, the union places its main reliance on the union member's obligation not to resort to court proceedings "until he has first exhausted the internal remedies provided for him in this Constitution and By-Laws and in the International Constitution."[5] The union contends that plaintiffs never filed any grievance or protest with the Executive Board of Local 757, which alone has the power to decide whether an alleged grievance shall be processed. In addition, the union points out, plaintiffs never sought to bring any union official before the Executive Board on a charge of violating his duties under the Constitution and By-Laws, or to pursue remedies available under the International Constitution to correct any delinquency on the part of local officials.[6]

Plaintiffs aver in their affidavits that they were in frequent contact with Emanuel Parish, the Secretary-Treasurer of the union, and were never able to get him or any other official to take any action on their complaints. They urge that their correspondence with Parish indicates that the Executive Board must have been aware of and sanctioned the union's inaction. They point out that they were but seasonable members of the union, who paid dues only for the six months they worked their ice cream routes (April-September), and had unsuccessfully sought to form their own collective bargaining unit apart from the 2,800 Good Humor hourly employees the union represents. Plaintiffs also claim that

---

5. Exh. A, p. 43, annexed to Affidavit of Anthony Carlino.

6. Local 757's Constitution states:
"All grievances and protests of any nature in connection with the affairs of this local union shall be in writing, signed by the member submitting same and shall be submitted promptly to the union office for consideration by the Executive Board." Section 17.02, Exh. A, fn. 5 *supra*.

\* \* \* \* \* \*

"The basis for charges against members and local officers for which they shall stand trial, shall, among other things, consist of the following:

"(a) Violation of any specific provision of this Constitution and By-Laws or of the International Constitution or failure to perform any of the duties specified thereunder.

\* \* \* \* \* \*

"(1) Violation of any of the provisions of the collective bargaining agreement; . . ." Section 18.01, *id.*

Article XIX, Section 6 of the International Constitution, Exh. B, annexed to Affidavit of Anthony Carlino, provides:

"The basis for charges against members, officers, elected Business Agents, Local Unions, Joint Councils or other subordinate bodies for which he or it shall stand trial shall consist of, but not be limited to, the following:

"(1) Violation of any specific provision of the Constitution or failure to perform any of the duties specified thereunder.

\* \* \* \* \* \*

"(8) Any action which is disruptive of or interferes with the performance or obligations of other members or Local Unions under collective bargaining agreements."

although they had frequently asked for copies of the union Constitution and By-Laws, these were never furnished by the union.

■ Although it has been held that ignorance of intra-union remedies did not excuse failure to exhaust those remedies, *Newgent v. Modine Mfg. Co.*, 495 F.2d 919, 927–28 (7 Cir. 1974), this Circuit has declared that, in determining whether to require exhaustion of such remedies, each case must be considered on its own facts. *Detroy v. American Guild of Variety Artists*, 286 F.2d 75 (2 Cir. 1961).

Here it is far from clear that Local 757's procedures allow for an appeal from a refusal to prosecute a grievance. On their face, they seem designed to deal with charges relating to misconduct of officers and members. Similar provisions have been held to be illusory when it came to providing a method whereby a union member could seek relief from a failure to take his grievance to arbitration. See *Yeager v. C. Schmidt & Sons, Inc.*, 355 F.Supp. 332 (E.D. Pa.1973).

■ Particularly where the efficacy and availability of the intra-union remedy is unclear, the union should show that the procedures are generally known to the union membership, which does not appear to have been the case here. See *Steib v. New Orleans Clerks and Checkers, Local No. 1497*, 436 F.2d 1101, 1106 (5 Cir. 1971).

■ The conclusion reached here that the union is not entitled to summary judgment on the unfair representation claim is not inconsistent with the dismissal of the breach of contract claim as against the Good Humor defendants. The claim against Local 757 arises out of "a statutory duty fairly to represent all of those employees" for whom it is the exclusive bargaining representative. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). It is "a discrete claim quite apart from the right of individual employees . . . to pursue their employer" by other means. *Czosek v. O'Mara*, 397 U.S. 25, 28, 90 S.Ct. 770, 773, 25 L.Ed.2d 21 (1970). Plaintiffs' complaint sufficiently alleges the union's

breach of its duty in failing and refusing to process their grievances arising out of their employment as Good Humor street vendors. While plaintiffs did not have an absolute right to have such grievances taken to arbitration, they clearly had the right to have their complaints considered and presented to the employer for possible settlement and not perfunctorily dismissed. See *Vaca v. Sipes, supra*, 386 U.S. at 191, 87 S.Ct. 903. The issues raised by the complaint as to Local 757 obviously present issues of fact for trial.

Accordingly, Local 757's motion for summary judgment is denied, and the claim against it becomes the only claim remaining in this case. All other claims are dismissed.

SO ORDERED.