Richard **SPIELMANN,** Plaintiff,

v.

**ANCHOR MOTOR FREIGHT, INC.,** William D. Mills, Robert Bertrand, Gerald Axner, International Brotherhood of Teamsters, Chauffeurs and Helpers of America Local 445, and Eastern Conference Automobile Transporters Joint Arbitration Committee, Defendants.

**No. 82 CIV 1726 (LBS).**

United States District Court,
S.D. New York.

Nov. 5, 1982.

Jack J. Sissman, Albany, N.Y., for plaintiff.

David R. Knowles, Cleveland, Ohio, A. Paul Bogaty, New York City, for defendant Anchor Motor Freight, Inc., et al.

Leaf, Deull, Drogin & Kramer, David Kramer, Jeffrey C. Miller, New York City, for defendant Local 445, Intern. Broth. of Teamsters.

## OPINION

SAND, District Judge.

Richard Spielmann brings this action against his former employer, Anchor Motor Freight, Inc. ("Anchor"), three of Anchor's supervisory employees, and Local 445 of the International Brotherhood of Teamsters ("Local 445" or "the Union") for damages, reinstatement to his former job and back pay.[1] Jurisdiction is based on § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which allows suits in the federal district courts for violations of collective bargaining agreements where the parties are covered by the LMRA. Plaintiff, a member of Local 445, alleges that he was unfairly discharged from his position as a driver at Anchor's Tarrytown, New York facility in violation of the existing contract between Anchor and the Union. He also alleges that Local 445 failed to represent him adequately in the grievance and arbitration proceedings stemming from his discharge. In addition to these federal claims, Spielmann brings a pendent state tort claim of intentional infliction of emotional distress based on a number of incidents that occurred at the Tarrytown facility in the months prior to his discharge.

The defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56, claiming that there exist no general issues of material fact supporting plaintiff's claims, and that they are entitled to judgment as a matter of law. All parties have submitted affidavits and memoranda of law. For purposes of this motion, Spielmann's version of the facts must be accepted, and all disputed matters must be resolved in his favor. *Bishop v. Wood,* 426 U.S. 341, 347 n. 11, 96 S.Ct. 2074, 2079 n. 11, 48 L.Ed.2d 684 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 139–40, 94 S.Ct. 1633, 1637–1638, 40 L.Ed.2d 15 (1974).

## FACTS

The plaintiff in this action, Richard Spielmann, was represented by Local 445 during the five years he was employed at Anchor's Tarrytown facility. During the period relevant to this action, Anchor and Local 445 were parties to a collective bargaining agreement which provided that all disputes between the parties relative to terms and conditions of employment were to be resolved by arbitration, and that all arbitration decisions were to be final and binding.

The actions forming the core of plaintiff's § 301 and inadequate representation claims took place on December 3, 1981. According to Spielmann, on that day he returned from a four-day haul to find that he was being immediately assigned another long trip. After he was told of his new assignment, Spielmann was given two messages indicating that he should call his home. One message was received at the Tarrytown terminal the prior evening, the other several hours before he was given his new assignment. Upon calling home, he discovered that his child had taken ill and that his wife was without transportation to take her to receive medical attention. At this point, the plaintiff informed the Anchor dispatcher that he would not take the assigned load and that he had to leave. Anchor, disputing the bona fides of Spielmann's claim and stressing his willingness to accept another

---

1. At the time of submission of this motion, plaintiff withdrew his claims against defendant Eastern Conference Automobile Transporters Joint Arbitration Committee.

820

long haul trip given to a more senior driver, interpreted Spielmann's rejection of the assignment as a "voluntary quit" under the local rider to the bargaining agreement, and terminated him that day.

Spielmann initiated grievance proceedings contesting his dismissal, the final step of which was a hearing held on December 16, 1981 before a six-member panel of the Eastern Conference Automobile Transporters Joint Committee, the body responsible under the collective bargaining agreement for deciding unresolved grievances. The Joint Committee is comprised of an equal number of management and union representatives.

A business agent of the Union, a Mr. Doorhy, represented Spielmann before the panel and argued the merits of his case. Spielmann himself testified at the hearing, at which his credibility was a crucial issue. Both Doorhy and Spielmann contended that the illness of Spielmann's child provided just cause under the bargaining agreement for his refusal to accept his new assignment. At its conclusion, the panel found that Spielmann's refusal to accept a load constituted a "voluntary quit" under the bargaining agreement and upheld Anchor's termination action.

Spielmann filed a charge with the NLRB several weeks later alleging that his discharge was prompted by his union activities and protests against working conditions. The NLRB Regional Director refused to issue a complaint, concluding that Spielmann's termination was based on his refusal to accept an assigned load in violation of the bargaining agreement. In June, 1982, Spielmann filed two more charges with the NLRB. One alleged that he had been discharged because he had circulated a petition criticizing management policies. The second alleged that Local 445 had failed to represent him adequately before the arbitration panel. The NLRB Regional Director refused to issue a complaint on either

charge, finding insufficient evidence to establish either that Local 445 breached its duty of representation or that Anchor committed an unfair practice.

The defendants move for summary judgment with respect to plaintiff's breach of contract and representation claims on the grounds that the decision of the arbitration panel is final and binding under the bargaining agreement, that the issues underlying plaintiff's claims have been previously litigated in defendants' favor before the NLRB, and that the plaintiff has failed to allege facts sufficient to show that the Union breached its duty of representation.

## DISCUSSION

*Federal Claims* [2]

■ Ordinarily a binding arbitration clause guarantees the finality of arbitration decisions and protects the employer against subsequent suits for breach of contract under LMRA § 301. However, where the discharged employee can show that his union breached its duty of representation, and that such breach undermined the integrity of the arbitral process itself, then the union's breach removes the bar of the finality provision of the collective bargaining contract. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567–68, 96 S.Ct. 1048, 1057–1058, 47 L.Ed.2d 231 (1976). As the Court noted in *Hines,* "enforcement of the finality provision where the arbitrator has erred is conditioned upon the union's having satisfied its statutory duty fairly to represent the employee in connection with the arbitration proceedings." *Id.* at 571, 96 S.Ct. at 1059.

■ To make out a claim that the union breached its duty of representation, the plaintiff must establish that the union's actions were "arbitrary, discriminatory, or in bad faith," that the grievance was processed in a "perfunctory fashion," or that the

2. We deal with plaintiff's federal claims only insofar as they are brought against Anchor and Local 445 and not against the other individuals named in the complaint. Individual employees cannot be made defendant parties to a cause of

action for breach of contract under LMRA § 301. *See Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 249, 82 S.Ct. 1318, 1325, 8 L.Ed.2d 1581 (1962); *Hall v. Pacific Maritime Assn.,* 281 F.Supp. 54, 61 (N.D.Calif.1968).

union conduct was "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299–301, 91 S.Ct. 1909, 1924–1925, 29 L.Ed.2d 473 (1971); *Vaca v. Sipes,* 386 U.S. 171, 190–91, 87 S.Ct. 903, 916–917, 17 L.Ed.2d 842 (1967); *Jensen v. Farrell Lines, Inc.,* 658 F.2d 27 (2d Cir. 1981). Where the union has pursued the available grievance or arbitration procedure to a conclusion, as Local 445 has done in this case, the plaintiff must also establish that the union's breach caused the arbitrator to reach an erroneous conclusion. That is, the plaintiff must show that there is "substantial reason to believe that [the union's breach] contributed to the erroneous outcome of the contractual proceedings." *Hines v. Anchor Motor Freight, supra,* 424 U.S. at 568, 96 S.Ct. at 1058.

▪▪▪ Because plaintiff has alleged that the Union breached its duty of fair representation and that the arbitrator reached an erroneous conclusion, the mere fact that there has been an arbitration award does not preclude further inquiry. *Compare Dinger v. Anchor Motor Freight, Inc.,* 501 F.Supp. 64, 67 (S.D.N.Y.1980) (claim under LMRA § 301 dismissed where plaintiff fails to allege unfair union representation). We also must reject defendants' contention that the prior decisions of the NLRB are binding on this Court. While the findings of the Board are certainly to be seriously considered as evidence in determining the existence of genuine issues of material fact, *see Local Union No. 59, International Brotherhood of Electrical Workers v. Namco Electric, Inc.,* 653 F.2d 143, 145 (5th Cir.1981), they are not necessarily entitled to preclusive *res judicata* effect. *Smith v. Local No. 25, Sheet Metal Workers International Association,* 500 F.2d 741, 747–48 and n. 4 (5th Cir.1974). This is particularly the case where, as here, the NLRB has refused to issue a complaint, thereby cutting off the possibility of judicial review in the appel-

late courts. *See Vaca v. Sipes, supra,* 386 U.S. at 182, 87 S.Ct. at 912; *Smith v. Local 25, supra,* at 747–48 and n. 4. Moreover, plaintiff has alleged new facts that he contends were not available to the NLRB when it considered his claims.[3] Plaintiff's action will therefore survive a summary judgment motion if he has set forth genuine issues of material fact that support a finding that the Union breached its duty of fair representation.

Plaintiff's claim of unfair representation turns on the failure of his union representative to challenge the membership of the arbitration panel as biased and, in particular, to request the disqualification of one of the union representatives on the panel, Mr. Dildine. Spielmann claims that the panel was biased against him because of his activities in the Teamsters for a Democratic Union ("TDU"), a national organization of dissident union members. He asserts as well that Mr. Dildine was "corrupt" and "had been on Anchor's payroll for twenty years."

The sole evidence in support of these claims consists of statements allegedly made to him by a Local 445 shop steward, a Mr. Fitzpatrick, on December 23, 1981, a week after the arbitration. Affidavit of Richard Spielmann, ¶¶ 11–14. There is some conflict in the papers presented as to when Spielmann "recollected" the substance of this conversation. According to the affidavit of plaintiff's counsel, Spielmann did not recollect this conversation until he was hypnotized on August 24, 1982. In the course of the hypnosis session, Spielmann "relived" the December 23 encounter and recalled the facts surrounding the conversation with Fitzpatrick and the information with respect to Dildine. Spielmann himself makes no mention of this memory lapse in his own affidavit. For whatever reason, either lack of memory or inadvertence, these facts are presented here for the first time. Because the NLRB lacked this information, Spielmann argues that its

---

**3.** Because this controversy has been so protracted and because we conclude that the result would be unaltered if the newly alleged facts

were properly pleaded and before the Court, we assume, *arguendo* this to be the case.

finding that he was fairly represented should be given little weight in this proceeding. Spielmann contends that the Union knew or should have known of the panel's bias and Mr. Dildine's association with Anchor, and that its failure to challenge the arbitration proceedings on these grounds constitutes a breach of its obligation to provide adequate representation.

The defendants argue that Spielmann was, by his own admission, adequately represented. When questioned at the hearing, Spielmann replied that Mr. Doorhy, the union representative, "did a fine job representing me. He explained the truth and not a fabricated story." Transcript of the December 16, 1981 arbitration hearing, Exhibit B, Anchor Motor Freight Motion to Dismiss, p. 28. Anchor and the Union also argue that Spielmann's evidence of the December 23 conversation lacks a basis in personal knowledge, is hearsay, and was obtained through an unreliable hypnotic session which defendants were not informed of and which they were not given an opportunity to attend. Moreover, the conflicting evidence as to when Spielmann recalled these events should, according to defendants, militate against assuming their complete truth. For these reasons, the defendants argue that this evidence would be inadmissible at trial and therefore should be ignored on this summary judgment motion pursuant to Fed.R.Civ.P. 56(e), which requires that affidavits be made on personal knowledge, that the affiant be competent to testify, and that the facts be admissible in evidence. Finally, defendants urge this Court to give great weight to the NLRB's finding that Spielmann was adequately represented before the arbitration panel.

We are not compelled to resolve whether the hypnotically-triggered recollections are admissible in evidence and therefore to be considered on this summary judgment motion. For even if we fully consider these statements, we find that plaintiff has failed to adduce any genuine issues of material fact sufficient to find that the Union breached its duty of fair representation.

■ In order to survive this summary judgment motion, the plaintiff must allege bad faith on the part of the Union, *Simberlund v. Long Island R.R.*, 421 F.2d 1219, 1224 n. 8 (2d Cir.1970), and must set forth concrete, specific facts from which one can infer a union's hostility, discrimination, bad faith, dishonesty or arbitrary exercise of discretion. *See Hubicki v. ACF Industries, Inc.*, 484 F.2d 519, 525–26 (3d Cir.1973); *Balowski v. UAW*, 372 F.2d 829, 835 (6th Cir.1967); *Wallace v. American Telephone and Telegraph Co.*, 460 F.Supp. 755, 760 (E.D.N.Y.1978). "[C]onclusory allegations without specifying supporting facts to show the union's lack of good faith fail to state a valid claim." *Lusk v. Eastern Products Corp.*, 427 F.2d 705, 708 (4th Cir.1970), quoted in *Wallace, supra.*

■ The sole fact that plaintiff offers to support his claim is that he was told by Mr. Fitzpatrick, a union trustee and shop steward, that one of the arbitration panel members had "been on [the company's] payroll for twenty years." This statement is conclusory in nature and, as to its truth, hearsay, and may not be considered on this summary judgment motion. Plaintiffs other statements are wholly conclusory as well and contain no factual allegations that, if proved, would support a finding that Mr. Dildine or any other member of the panel was biased. We also must note the absence of an affidavit by Mr. Fitzpatrick himself setting forth facts on which to base plaintiff's allegations of bias. None of the other affidavits submitted by the plaintiff bear on the bias issue or the question of proper representation. They address instead the underlying merits of plaintiff's unfair discharge claim.[4] In opposition to plaintiff's

---

4. Plaintiff makes much of the fact that an Administrative Law Judge in an unemployment insurance proceeding found after a full hearing that he was not a "voluntary quit" and was therefore entitled to unemployment insurance benefits. *See* Spielmann Affidavit, ¶ 6; Exhibit B to Spielmann Affidavit. Yet we are bound even less by the decision of this particular administrative agency than we are by the decisions of the NLRB. The *res judicata* and collateral estoppel effect accorded the decision of an administrative agency before a court will de-

conclusory allegations, the defendants have submitted the sworn affidavit of the President of Anchor Motor Freight disclaiming any allegation that Mr. Dildine is or ever was employed by or received payments from Anchor.

Plaintiff has also failed to set forth any facts that would show that the union representative had knowledge that the panel was biased or that any of its members were in the employ of Anchor. Nor does he set forth facts showing that Doorhy deliberately or in bad faith decided not to challenge the make-up of the panel based on such knowledge. Plaintiff's statement that Doorhy indicated to him several months after the hearing that his involvement with TDU had "hurt him with the Union and with Anchor" hardly presents an issue of fact on which to base a claim that the Union acted in an arbitrary, discriminatory or perfunctory fashion. Indeed, the plaintiff appears to acknowledge that the Union may have lacked information regarding Dildone at the time of the hearing, but only had "reason to believe" that he was in the employ of Anchor. Spielmann Affidavit, ¶ 24.

■ A mere showing that the Union representative might have been negligent or have made a mistake in judgment is not enough to make out a claim of lack of fair representation. *Harris v. Schwerman,* 668 F.2d 1204, 1206 (11th Cir.1982). Similarly, the conclusory allegation that the Union failed to call unnamed witnesses "it knew

could have corroborated the plaintiff's allegation[s]" is simply too general, without more, to sustain an unfair representation claim.

■ With the sole exception of Spielmann's conclusory assertions of bias and failure to call unnamed witnesses, all the evidence presented to this Court supports the view that no genuine issue of fact exists indicating that Spielmann was inadequately represented. There is no dispute that Spielmann had full opportunity to present his case to the panel and to testify on his own behalf at a proceeding in which his credibility was a key element. Nor has he set forth any facts showing that the Union withheld evidence critical to deciding the issues before the panel on the merits. Indeed, there is uncontradicted evidence in the form of Spielmann's own statement at the hearing that he was well-represented. Apart from Spielmann's own statement at the hearing—which we do not regard as conclusive of the issue—our comparison of the transcript of the arbitration with the arguments presented in plaintiff's moving papers indicate that there are no facts now being asserted that bear on the merits of plaintiff's case that were not fully presented to the arbitration panel, which obviously disbelieved his version of the facts. Plaintiff's entire claim, then, turns on the sufficiency of the facts set forth with respect to the issue of alleged bias and the Union's

pend on the similarity of the issues before the two bodies, the parties' opportunity to litigate, and the expectations of the parties before the agency on the question of finality. *See Mitchell v. National Broadcasting Co.,* 553 F.2d 265, 268–70 (2d Cir.1977); *Sierra Club v. Alexander,* 484 F.Supp. 455, 463–64 (N.D.N.Y.1980). Certainly, we would not apply principles of collateral estoppel against these defendants, who were not even before the unemployment insurance agency. Moreover, the criteria used to determine whether Spielmann's actions constituted a "voluntary quit" for purposes of unemployment insurance are arguably quite different from those used to decide this issue under the terms of the Anchor-Local 445 collective bargaining contract.

More important, however, is the fact that the decisions of the unemployment insurance agency and the NLRB whether plaintiff's actions

constitute a "voluntary quit", as well as most of the statements in plaintiff's affidavits, speak to the merits of plaintiff's § 301 breach of contract claim. As we pointed out above, however, we must afford finality to the decision of the arbitration panel unless plaintiff first presents facts sufficient to support a claim that he was improperly represented before the panel. In the absence of such a showing, we must not disturb the finality of the arbitrators' decision even if we would have arrived at a different result on the merits. *See Simberlund v. Long Island R.R.,* 421 F.2d 1219, 1225–26 (2d Cir.1970); *Nagel v. International Brotherhood of Teamsters,* 396 F.Supp. 391, 393 (E.D.N.Y. 1975) ("It is not the court's function to inquire into the merits of the particular grievance involved.... The only question for resolution ... is whether the union acted in bad faith.").

failure to challenge the make-up of the panel. On this issue we find that defendants have met their burden of showing that there exist no genuine issues of material fact supporting a claim of unfair representation, and grant summary judgment in their favor on plaintiff's federal claims under LMRA § 301.[5]

*State Law Claims*

In addition to his federal claims, plaintiff brings a pendent state law claim for damages under a theory of intentional infliction of emotional distress. The claim is based on a number of incidents between plaintiff and the individually named defendants that occurred prior to and during plaintiff's December 16th arbitration proceeding. First, plaintiff claims that defendant Robert Bertrand, the Assistant Terminal Manager at Anchor's Tarrytown terminal, attempted to introduce false evidence at a grievance hearing for the purpose of intimidating the plaintiff. Second, plaintiff asserts that he was "verbally abused" by defendant Gerald Axner, the Operations Superintendent at the Tarrytown terminal, in response to inquiries about pay due him. Third, he asserts that defendant William Mills, the Terminal Manager at Tarrytown, tore down a petition plaintiff had posted that protested certain work rules. Finally, Spielmann claims that defendant Bertrand made "irrelevant and inflammatory remarks" concerning the plaintiff at the December 16 arbitration hearing.

Defendants argue that these state law tort claims are pre-empted under the rule of *San Diego Building Trades Council v. Gar-* mon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In *Garmon,* the Supreme Court held that where activity is arguably subject to § 7 or § 8 of the National Labor Relations Act, the federal and state courts must defer to the exclusive competence of the National Labor Relations Board and are without jurisdiction to adjudicate tort claims based on the same activity. The plaintiff asserts, by contrast, that his claims fall into the narrow exception to *Garmon* carved out by *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). In *Farmer,* the Court stated that the pre-emption doctrine should not apply to activity "that otherwise would fall within the scope of *Garmon* if that activity 'was a merely peripheral concern of the Labor Management Relations Act....'" *Id.* at 296, 97 S.Ct. at 1061. (Citation omitted). The Court held that jurisdiction over a state tort claim for intentional infliction of emotional distress intended to protect citizens against "outrageous conduct" was not pre-empted by the NLRA, even where the alleged conduct occurred in the context of a discriminatory firing and could arguably form the basis of an unfair labor practices claim.

▬▬▬ As an initial matter, we must address the advisability of this Court's continued jurisdiction over plaintiff's state law tort claims where we have granted summary judgment on his federal claims prior to trial. The doctrine of pendent jurisdiction allows a federal court to hear both state and federal causes of action where both sets of claims derive from a "common nucleus of

---

5. To the extent plaintiff's complaint could be construed as one seeking to vacate the arbitrators' decision on the basis of a partial panel, the Court is bound to "scan the record" to see if it supports such a claim. *Saxis Steamship Co. v. Multifacs International Traders, Inc.,* 375 F.2d 577, 582 (2d Cir.1967). Having read the transcript of the arbitration proceeding and the other papers presented to the Court, we find, as with the breach of representation claim, that plaintiff has failed to adduce any genuine issues of fact supporting a showing of fraud, corruption, partiality, or any of the other grounds contained in 9 U.S.C. § 10 necessary to vacate an award. In the absence of such a showing, the courts must defer to the arbitrators' decision unless it fails "to draw its essence" from the agreement. *Local 771, I.A.T. S.E. v. RKO General, Inc.,* 546 F.2d 1107 (2d Cir.1977) (citing *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). There is no contention here that the arbitration panel's decision was outside its authority under the contract. Thus, we must uphold the arbitrators' decision even if we would have reached a different conclusion were we to have heard the case in the first instance. *See Local 771, supra,* at 1113.

operative fact," and would ordinarily be expected to be tried in one proceeding. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, .16 L.Ed.2d 218 (1966). *Gibbs* recognizes, however, that pendent jurisdiction is a doctrine of discretion, not of right. In deciding whether to retain jurisdiction over state law claims after federal claims are dismissed—the question that now confronts this Court—*Gibbs* counsels that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. Yet *Gibbs* also notes that there may be situations where the state law claim "is so closely tied to questions of federal policy" that jurisdiction should be retained. *Id.* at 727, 86 S.Ct. at 1139. *Gibbs* itself involved a question of federal pre-emption. of a state law tort claim. In that context, the Court noted that "the question whether the permissible scope of the state claim was limited by the doctrine of pre-emption afforded a special reason for the exercise of pendent jurisdiction." *Id.* at 729, 86 S.Ct. at 1140. Because the state law question in this case, as in *Gibbs,* turns substantially on the question of federal pre-emption, we deem it advisable to retain jurisdiction despite our granting of summary judgment against plaintiff's federal claims.

■ A further question is raised with respect to jurisdiction over the individual defendants on plaintiff's pendent state claims. As we noted above, n. 2, *supra,* individuals cannot be made parties to a suit under § 301 of the LMRA except where the employer itself is an individual. We therefore found jurisdiction only with regard to Anchor and Local 445 on plaintiff's federal claims. Because this Court has no jurisdiction over the individual employees named in plaintiff's federal cause of action, and because jurisdiction over suits for breach of contract under LMRA § 301 is shared concurrently with the states, *Smith v. Evening News Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Di Mola v. Local Union 808, International Brotherhood of Teamsters,* 95 Misc.2d 910, 408 N.Y.S.2d 731 (N.Y.

Civ.Ct.1978), there is some question whether we can assert jurisdiction over these individuals on a pendent state cause of action under a theory of "pendent-party" jurisdiction. *See Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Cammarata v. Ice Cream Drivers and Employees Union,* 441 F.Supp. 696, 699 (E.D.N.Y. 1977), aff'd 591 F.2d 1329 (2d Cir.1978). In *Aldinger,* the Court refused to recognize jurisdiction over .a county on a pendent state claim where no independent basis of federal jurisdiction existed and where the main federal claim was brought pursuant to 42 U.S.C. § 1983, which was construed at that time to bar suits against state and local governmental units. The Court in *Aldinger* was quite explicit, however, in countenancing against "sweeping pronouncement[s]" as to the power of the federal courts to entertain pendent state claims against parties over whom there is no independent basis of federal jurisdiction, noting that "other statutory grants [of · jurisdiction] and other alignments of parties and claims might call for a different result." *Aldinger, supra,* 427 U.S. at 18, 96 S.Ct. at . 2422. This case seems particularly appropriate for the assertion of pendent party jurisdiction for, as we note above, we have purposely retained jurisdiction over the pendent state claims to decide the extent to which they are pre-empted by federal labor law and the jurisdictional reach of the NLRB. It would be somewhat anomalous to hold, on the one hand, that the question of NLRB pre-emption of state tort claims implicates such important federal interests as to retain jurisdiction under *Gibbs,* while at the same time refusing to allow pendent party jurisdiction over the individuals whose actions form the basis of such claims. For these reasons, we retain jurisdiction over the individual defendants for purposes of resolving plaintiff's pendent tort claims.

Turning then to the merits, the first question we must decide is whether the acts which form the basis of plaintiff's state law claims are arguably an unfair labor practice under § 8 and therefore pre-empted by *Garmon,* or whether the allegedly wrongful

conduct is "a merely peripheral concern" of federal law falling within the exception to the *Garmon* doctrine enunciated in *Farmer.*

*Farmer* makes clear that a cause of action for intentional infliction of emotional distress alleging outrageous behavior is not pre-empted by federal labor law, for "there is no federal protection for conduct on the part of union officers which is so outrageous that 'no reasonable man in a civilized society should be expected to endure it.' " *Farmer, supra,* 430 U.S. at 302, 97 S.Ct. at 1064 (citation omitted). Pre-emption is inapplicable where the state has a "substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Id.* At the same time, the Court emphasized that the arguably prohibited activity itself cannot form the underlying "outrageous" conduct on which the state claim is based; nor can threats of such behavior provide the basis for suit. "Simply stated, it is essential that the state tort be either unrelated to [the arguably unfair labor practice] or a function of the particularly abusive manner in which the discrimination is accomplished or threatened . . . ." *Id.* at 305, 97 S.Ct. at 1066.

We find that the factual allegations contained in plaintiff's first cause of action do not suggest such outrageous behavior as is necessary to establish a separate state cause of action for intentional infliction of emotional distress. All of plaintiff's claims revolve around alleged unfair labor practices and the circumstances of plaintiff's temporary dismissal on August 5, 1981 and his permanent dismissal on December 3, 1981. Indeed, plaintiff filed three separate charges with the NLRB, each involving actions closely tied to those underlying his state tort claims. Plaintiff's allegations are not focused on the "particularly abusive manner" in which the alleged acts took place, *Farmer, supra,* at 305, 97 S.Ct. at 1066, but rather on the arguably prohibited behavior itself which, as *Farmer* notes, cannot form the basis of the state claim.

We do not hold, of course, that a suit for intentional infliction of emotional distress is jurisdictionally barred in the federal and state courts by the exclusive jurisdiction of the NLRB over related unfair labor practices; *Farmer* makes clear that Congress did not intend to pre-empt state claims of this sort. At the same time, however, a plaintiff cannot obtain judicial intervention with respect to the regulation of activities of primary concern to the NLRB merely by labelling his cause of action as a state tort of this kind. On a motion for summary judgment, the court must pierce the pleadings and ascertain the factual circumstances underlying plaintiff's claim.

In this case, we find that plaintiff has failed to set forth any issues of material fact suggesting outrageous behavior "exceeding all bounds usually tolerated by decent society," *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 992, 373 N.E.2d 1215 (1978) (citing Prosser, Torts § 12, at 56 (4th ed. 1971)), such as to support a claim of intentional infliction of emotional distress under New York law. Instead, we find that the behavior plaintiff complains of is of primary concern to the NLRB, and that allowing a state cause of action under these circumstances would threaten undue interference with the federal regulatory scheme. *See Farmer, supra,* 430 U.S. at 302, 97 S.Ct. at 1064. As the Ninth Circuit recently noted in a similar context, "[a]rtful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge." *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). Under these circumstances, we find that plaintiff's state cause of action is so intimately linked to the jurisdiction of the NLRB over unfair labor practices as to be pre-empted under the *Garmon* doctrine.

## CONCLUSION

For all the foregoing reasons, we grant defendants' motions for summary judgment as to both of plaintiff's causes of action. The action is hereby dismissed.

SO ORDERED.