**Ira J. PASSO, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, National Association of Letter Carriers, and National Association of Letter Carriers, Branch 36, Defendants.**

No. 84 Civ. 6138 (JMC).

United States District Court,
S.D. New York.

March 17, 1986.

Warren J. Bennia, New York City, for plaintiff.

Cohen, Weiss and Simon, New York City (Richard M. Seltzer, of counsel) for defendants Nat. Ass'n of Letter Carriers, and Nat. Ass'n of Letter Carriers, Branch 36.

Rudolph W. Giuliani, U.S. Atty., New York City (Paul K. Milmed, of counsel) for defendant U.S. Postal Service.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendants' motions for summary judgment are granted. Fed.R.Civ.P. 56(b).

## FACTS

Plaintiff Ira J. Passo brings this action against his unions and employer. He alleges that the unions breached their duty of fair representation and the employer breached the collective bargaining agreement and plaintiff's fifth amendment rights.

The undisputed facts are as follows.[1] Passo was an employee of the United States Postal Service ["USPS"] for fourteen years. Passo had been living with Geraldine Johnson, another USPS employee, for six years. On January 10, 1983, Johnson locked Passo out of their apartment. Johnson alleges that at approximately 6:00 a.m. the following day, Passo met her in the area of the time clock, at the FDR postal station where they both worked, and requested the keys to the apartment. Johnson claims that when she refused Passo punched her in the arm. Although Johnson did not report the incident to her supervisors at that time, she claims that she received a threatening phone call from Passo at 11:15 a.m., after which she reported both incidents to Postal Service Supervisor Joseph Krattinger. Johnson was treated at the Postal Service Medical Unit for a contusion. She received a thirty-day transfer to another station because she feared for her safety. Passo was suspended in contemplation of discharge and thereafter sought the aid of his union Branch 36 ["Branch 36"] of the National Association of Letter Carriers

---

1. Defendants accept these facts as true for the purpose of these motions.

["NALC"], in prosecuting a grievance with the USPS.

The grievance procedure established in the Postal Service-NALC Collective Bargaining Agreement provides for several grievance steps to be followed by arbitration. Prior to filing a step 1 grievance, the union shop steward Larry Domfort reviewed the USPS file with Employee Services and met separately with Passo, Johnson, four or five co-workers of Passo who shared Passo's work station, and Sidney Smalls, another co-worker. Passo denied both incidents. Johnson did not retract her allegations but wanted the charges dropped. Smalls claimed that he was standing by the time clock when the alleged assault occurred and witnessed the punch. Passo's other co-workers provided no useful information. Domfort did not interview Johnson's work partners. Nor did he speak to the mail carriers on the route closest to where the punch allegedly occurred.

On or about January 20, Domfort asked Johnson to write a statement requesting that Passo not be discharged. Johnson agreed and Domfort subsequently presented her letter to Station Manager Jasko. On January 25, a step 1 grievance proceeding was held. Domfort met with Krattinger and again presented Johnson's letter. In addition, Domfort argued that all the charges should be dropped because the matter amounted to no more than a lovers' quarrel. Krattinger indicated that he thought the charges were a "phony thing" but denied the grievance. At the step 2 meeting, Domfort again made the lovers' quarrel argument. Passo was also present and asserted that no incident occurred. The grievance was denied as was the step 3 grievance to follow.

In a letter dated February 15, 1983, Branch 36 informed Passo that an arbitration was to be held on March 7, 1984 and that Passo was to attend a meeting with Danny Felton, Branch 36 vice-president, at the Union office on February 20. Passo, who was living in Florida at the time, responded some time after February 28 by

calling Felton's office and leaving word that he would arrive in New York City for the arbitration by March 7. Felton met with Passo one-half hour before the arbitration hearing was to begin and then represented Passo at the arbitration.

The hearing was brief. Krattinger, Johnson, Smalls and Passo were the only witnesses called to testify. Felton asked no questions of Passo. On questioning by the arbitrator, Passo denied that he ever touched Johnson. Johnson testified that Passo hit her while she was standing by the clock near the time cage. Smalls testified that the incident occurred by his route. Felton did not question either Johnson or Smalls with respect to their differing testimony. On summation, Felton argued that the matter was a lovers' quarrel.

On May 29, 1984, the arbitrator upheld the discharge. Plaintiff then instituted this suit alleging six causes of action against the NALC and Branch 36 and four against the USPS. Plaintiff has since withdrawn several of these, leaving a claim against the NALC and Branch 36 for breach of the duty of fair representation and claims against the USPS for breach of the collective bargaining agreement and violation of plaintiff's fifth amendment rights.

Defendants have moved for summary judgment arguing that the undisputed facts establish that the unions did not breach their duty of fair representation. Because all of plaintiff's remaining claims stand or fall on this issue, *see Hines v. Anchor Motor Freight*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976), defendants seek dismissal of the complaint. For the reasons that follow, defendants' motions are granted.

## DISCUSSION

A union's duty of fair representation requires that it represent fairly all employees when it bargains with the employer and administers the collective bargaining contract. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). The obligation is one of

good faith and honesty. *See id.* at 338. Thus, a plaintiff may establish a breach of the duty only by showing that the union's actions were arbitrary, discriminatory or in bad faith, *see Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Jensen v. Farrell Lines, Inc.,* 658 F.2d 27, 29 (2d Cir.1981), or that the union ignored the grievance or processed it in a perfunctory manner, *see* 386 U.S. at 191, 87 S.Ct. at 917; *Spielmann v. Anchor Motor Freight, Inc.,* 551 F.Supp. 817, 821 (S.D.N.Y.1982). Proof of negligence or poor judgment is not enough. *Graf v. Elgin, Joliet and Eastern Ry. Co.,* 697 F.2d 771, 778 (7th Cir.1983); *Harris v. Schwerman,* 668 F.2d 1204, 1206 (11th Cir.1982); *Spielmann v. Anchor Motor Freight, Inc.,* 551 F.Supp. at 823; *Capobianco v. Brink's Inc.,* 543 F.Supp. 971, 975 (E.D.N.Y.1982), *aff'd,* 722 F.2d 727 (2d Cir.1983).

█ In the instant case, plaintiff contends that defendant unions treated his grievance in an arbitrary or perfunctory manner. He first points to the "lovers' quarrel" argument advanced by both Domfort at the step 1 meeting and Felton at the arbitration hearing and claims that such an argument compromised his position of innocence by attempting to justify the alleged incidents rather than denying that they occurred. As defendants point out, however, the unions' argument did not concede the assault but rather suggested that whatever took place was insufficient under the circumstances to constitute just cause for dismissal. In any event, the unions' choice of argument was not so irrational as to be arbitrary. *See Jones v. TWA,* 495 F.2d 790, 798 (2d Cir.1974). At best, in this respect, plaintiff alleges negligence, which as previously noted is not actionable.

█ Plaintiff next argues that Domfort's failure to interview Johnson's partner, Martha Cave,[2] and the employees on the route closest to where the incident occurred is evidence of the perfunctory consideration

given his grievance. At her deposition in this action, Cave testified as follows:

Q. And when [Johnson] came to the route [on the day of the incident], did she say anything to you?

A. No, no more than speak.

Q. Did she say good morning?

A. Yes. She always did.

Q. Was she smiling?

A. Always.

Q. Did you say anything to her?

A. Most likely. We talked, always talked.

Q. Did you observe anything unusual about Geraldine Johnson's behavior before you went out on the route?

A. No.

Q. Did it appear to you at that time that business was proceeding as usual with regard to Johnson performing her functions as letter carrier, you performing your functions and Sidney Small performing his functions as letter carrier?

A. The same, usual.

Q. That is from the period of time from 6:00 o'clock when you clocked in and 8:00 o'clock, approximately, when you went out to walk your route?

A. Yes.[3]

Plaintiff claims that had the unions interviewed Cave they could have used such testimony to contradict a sworn statement made shortly after the incident by the eyewitness Sidney Smalls in which he said that Johnson was crying uncontrollably during her encounter with Passo. In the same deposition, however, Cave also testified:

Q. So at 11:00 o'clock you, Geraldine Johnson and Sidney Smalls would have been at 3M eating lunch?

A. Yes.

Q. During that period of time, did Geraldine Johnson say anything about Ira Passo having hit her?

A. No.

2. Passo also argues that the unions should have interviewed Johnson's partner Rodolfo Diaz, who could have impeached Smalls on a minor point.

3. Deposition of Martha Cave at 15, 17 (July 19, 1985).

Q. Did Sidney Smalls mention anything?

A. No.

Q. Did Geraldine Johnson appear upset at all?

A. Yes.

Q. She did?

A. Yes.

Q. Did you ask her anything about—

A. No.

Q. In what respects did she appear upset?

A. Nervous, jittery, crying.

Q. Crying?

A. Yes.

Q. So she was crying during the lunch meal?

A. Yes.[4]

It is doubtful that Cave's testimony would have benefitted plaintiff.

With respect to the employees at the route closest to where the alleged incident occurred, plaintiff identifies only two. The first, Leroy Cooper, testified at a deposition as follows:

Q. Have you ever been assigned to the FDR station?

A. I have been assigned ever since I started.

Q. Were you working at the FDR station January 11th, 1983?

A. I think so. I'm not certain.

\*    \*    \*    \*    \*    \*

Q. Did you observe Ira Passo or Geraldine Johnson during your working hours on that day at all?

A. I'm sure I seen them in passing.

Q. Did you see either of them when they were clocking in on that day?

A. I can't recall. I don't think so. I may have, but, you know, there are so many people clocking in.

Q. Can you recall if you saw them while you were clocking in?

A. No I couldn't.

\*    \*    \*    \*    \*    \*

Q. Did you observe Passo striking her?

A. No, I did not.

Q. Were you anywhere in the vicinity when the incident is supposed to have happened?

A. If I was, I wasn't looking directly at it, if I was. I couldn't say that I was.

Q. Was there a point in time that a crowd started to mill around that you observed that?

A. No, not at all.

Q. Was there any kind of disturbance that you were aware of?

A. Not at all.[5]

The other employee, Frank Vargas, gave the following desposition testimony:

Q. Now, on that day, did you observe Ira Passo hit Geraldine Johnson?

A. No, I can't say that. I don't remember.

\*    \*    \*    \*    \*    \*

Q. On that day, in the morning did you observe Ira Passo and Geraldine Johnson together?

A. I don't remember.

Q. You can't recall?

A. I can't recall.

Q. Do you recall when you clocked in whether there was a crowd around the clock at the time that you were clocking in?

A. No, I cannot recall that.

Q. Can you recall if there was any altercation that morning when you clocked in?

A. No, I cannot recall that.

Q. Did anyone bring to your attention that morning that Ira Passo had supposedly hit Geraldine Johnson?

A. I heard something. No one came directly to me. I heard rumors. I heard people talk, but I was not—I did not see it, nor did I speak to anybody directly on it.

**4.** *Id.* at 19–20.

**5.** Deposition of Leroy Cooper at 3, 5, 6 (July 19, 1985).

Q. So you overheard other people talking?

A. I overheard conversation.

Q. Can you recall who you overheard talking about it?

A. No, I cannot.

Q. So it's your testimony you didn't observe Johnson and Passo together at all?

A. No. I cannot recall seeing them together, nor can I recall seeing them at all that day.

Q. And you can't recall seeing Ira Passo hit Geraldine Johnson?

A. No.[6]

■ Had the unions discovered these mailmen of murky memory, they would have been justified in not calling either to testify. Plaintiff cannot seriously contend that such testimony would have made a difference. When a claim of unfair representation is premised, at least in part, on the union's failure to call witnesses that could have helped the plaintiff's case, it is plaintiff's obligation to establish that such witnesses exist. *See Spielmann v. Anchor Motor Freight, Inc.,* 551 F.Supp. at 823. This plaintiff has not done so.

■ Finally, plaintiff claims that Domfort failed to inform Passo or Felton of Krattinger's statement that charges against Passo were a "phony thing"; that as a result, Felton was unable to properly examine Krattinger at the hearing; that during the hearing Felton did not question Johnson or Smalls concerning their differing testimony as to where the alleged incident occurred; that Domfort failed to inform Passo or Felton of the conversation he had with Smalls in which Smalls indicated that he was by the time clock when the incident occurred, a statement which differed from his testimony at the hearing; and that representatives of Branch 36 failed to mention, in any stage of the proceeding, that Passo was not permitted to work prior to the effective date of his suspension from employment. Plaintiff is grasping at straws. "The grievance processes cannot be expected to be error-free." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). Nor can lay union representatives be expected to perform as lawyers might. *See Findley v. Jones Motor Freight,* 639 F.2d 953, 958–59 (3d Cir. 1981). There is no evidence that the unions acted in bad faith or proceeded in an arbitrary or perfunctory manner. Indeed, it is undisputed that Branch 36 representatives reviewed the USPS file with Employee Services, interviewed plaintiff, Johnson, Smalls and four or five coworkers, persuaded Johnson to write a letter requesting that plaintiff not be discharged, presented that letter to both the Station Manager and Krattinger, and sought to meet with plaintiff prior to the arbitration date. It is also undisputed that plaintiff did little to aid the grievance process. These factors indicate the unions' diligence and good faith.

Summary judgment will be granted when there is no genuine issue of material fact. *Granite Computer Leasing Corp. v. Travelers Indem. Co.,* 751 F.2d 543, 545 (2d Cir.1984); *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1982); Fed.R.Civ.P. 56(c). The burden is on the moving party to establish the absence of any such factual issue. *Heyman v. Commerce & Ind. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975). All ambiguities must be resolved and all reasonable inferences drawn against the moving party. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). The Court is persuaded that defendants have met their burden.

■ Plaintiff argues that because there is no transcript of the arbitration hearing, issues exist as to what transpired at that hearing. However, "the mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d at 445 (emphasis in original). Plaintiff points to no specific issue in

6. Deposition of Frank Vargas at 8–10 (July 19, 1985).

dispute, but merely offers a vague and conclusory allegation. This does not suffice. *See id.* Accordingly, summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted. Fed.R.Civ.P. 56(b).

The Clerk of the Court is directed to enter judgment for the defendants and dismiss the complaint.

SO ORDERED.