Joseph **LARRY**

v.

**PENN TRUCK AIDS, INC., Stanley Tamavich, Robert Link, Teamsters Local No. 312, Domenick Maggi.**

**Civ. A. No. 80–3875.**

United States District Court,
E.D. Pennsylvania.

July 21, 1983.

Anthony M. DiMassa, DiMassa Associates, Ltd., Philadelphia, Pa., for plaintiff, Joseph Larry.

Francis M. Milone, Michael E. Schu, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendants, Penn Truck Aids, Inc., Stanley Tamavich, and Robert Link.

## MEMORANDUM

LUONGO, Chief Judge.

The amended complaint in this civil action was filed by plaintiff Joseph Larry against his employer, Penn Truck Aids, Inc. (PTA), his union, Teamsters Local No. 312 (Local 312), and certain individuals, and alleges (1) that PTA violated the collective bargaining agreement between it and Local 312 by laying Larry off in violation of his seniority rights under the agreement; (2) that Local 312 breached its duty of fair representation by failing to adequately represent Larry's interests in grievance proceedings before a "Special Joint Committee" of labor and management; and (3) that the individual defendants, Stanley Tamavich, Robert Link and Domenick Maggi, tortiously interfered with Larry's seniority rights under the collective bargaining agreement. Jurisdiction exists under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

On July 12, 1982, I issued an opinion and order denying the motion of defendants PTA, Link and Tamavich for summary judgment. *Larry v. Penn Truck Aids, Inc.,* 94 F.R.D. 708 (E.D.Pa.1982). I did so, however, without prejudice to their right to resubmit the motion after further development of the factual record. Their renewed

motion for summary judgment is now before the court. For reasons hereafter stated, defendants' motion for summary judgment will be granted.

### Background

The record on this motion consists of the affidavits of Larry, Tamavich and Joseph Benson, the alternate shop steward for Local 312 at the time of the events in dispute; the deposition of Larry; and the authenticated transcripts of the grievance hearings held before the Penn Truck Aids Special Joint Committee on June 2, 1980 and July 7, 1980. These materials establish the absence of a dispute as to the following facts. PTA is a labor broker; it supplies truck drivers to businesses that do not employ their own drivers. Relations between PTA and its employees are governed by the collective bargaining agreement between PTA and Local 312. Larry, a member of Local 312 was hired by PTA on July 21, 1977, and was assigned to PTA's casual work list. This list was made up of those PTA employees who had not received assignments to work regularly with a PTA customer.

Defendant Domenick Maggi was hired by PTA on September 8, 1977 and, like Larry, was initially assigned to PTA's casual work list. On September 11, 1978, Maggi received a permanent assignment with Eaton Corporation (Eaton). Three months later, Larry was awarded a permanent assignment, also with Eaton. Because Larry was hired before Maggi, Larry should have been awarded a permanent assignment prior to Maggi. Nevertheless, for reasons neither certain nor material to this motion, Maggi was assigned to Eaton ahead of Larry.

Under the collective bargaining agreement between Local 312 and PTA, layoffs are made in reverse order of seniority. Seniority is measured in terms of length of service with a specific PTA customer:

Customer seniority as measured by length of service with such customer at the same location shall prevail except in those instances where the Employer and Union involved agree to the contrary. Controversies regarding seniority shall be settled by the Employer and the Union. Failing settlement by these parties, the matter shall be processed under the grievance procedure set out in ... this Agreement.

(Collective Bargaining Agreement, Art. 5, Section 2). Thus, as a result of receiving the earlier permanent assignment, Maggi had more customer seniority at Eaton than Larry.

In the summer of 1979, Larry discovered that Maggi's assignment to Eaton predated his own and that he was subordinate to Maggi in terms of customer seniority. Immediately upon learning of this fact, Larry complained to representatives of Local 312 and PTA. He did not file a grievance at that time.

In early 1980, Larry learned that there was to be a reduction in the workforce assigned to Eaton and that he would be laid off. Consequently, Larry decided to grieve his subordination to Maggi on the Eaton seniority list. In February 1980, Local 312 filed a grievance on his behalf contending that Larry's seniority rights had been violated when Maggi was given a permanent assignment ahead of Larry. A grievance was then filed on Maggi's behalf to protect his rights. In or about March 1980, an informal grievance meeting was held between Tamavich of PTA and John DiLuzio, the business agent of Local 312. Larry and Maggi were also present. The meeting concluded with PTA determining that Larry should have been offered the assignment with Eaton before Maggi. Accordingly, Larry was reinstated to a position of seniority over Maggi, and Maggi was laid off.

DiLuzio filed a grievance on Maggi's behalf following the layoff. The early stages of the grievance process were bypassed, and the grievance was taken, instead, directly to the "Eastern Conference Area-Wide Penn Truck Aids, Inc. Special Joint Committee"

(Special Joint Committee). The Special Joint Committee consists of an equal number of company and union representatives; its function is to resolve grievances where informal dispute resolution between the company and the union is unsuccessful. Although Larry knew that Maggi's grievance would be heard by the Special Joint Committee, Larry at that time did not file a grievance to protect his rights.

On June 2, 1980, the Special Joint Committee met in Arlington, Virginia to hear Maggi's grievance. Edward Burke, the President of Local 312, presented Maggi's case in the absence of DiLuzio who was attending to other union matters. Maggi was also present and testified as a witness in his own behalf. PTA's position was presented by Tamavich. Larry was not notified of the time and place of the hearing and was not present.

Briefly, the transcript of the June 2 hearing discloses that Maggi testified that he had been assigned to Eaton three months in advance of Larry. Several months after Larry was assigned to Eaton, there began rumblings about whether Larry or Maggi had greater seniority than the other. Maggi testified further that he asked PTA for a seniority list to clarify the matter, and that in November 1979, he received a list dated November 14, 1979 which placed him ahead of Larry. This list was introduced and admitted into evidence. Maggi concluded by testifying that it was not until March 1980 that the company reversed itself and subordinated him to Larry.

Tamavich responded by explaining to the Special Joint Committee that Larry had been hired by PTA before Maggi and that Larry should have received the Eaton assignment before Maggi. He further testi-

fied that the matter had been discussed with the union and the parties during a grievance meeting in March, and that PTA had determined at the close of that meeting to rectify the assignment error by awarding Larry greater seniority than Maggi. Burke argued in rebuttal that Larry had waived his right to grieve the seniority issue by delaying for several months in filing a grievance.[1]

The Special Joint Committee apparently accepted Burke's waiver argument for at the end of the June 2 hearing, it ruled that Maggi's seniority rights had been violated when he was laid off instead of Larry. The Special Joint Committee ordered PTA to reinstate Maggi and place Larry on layoff. PTA complied with the ruling.

Larry did not learn of the Special Joint Committee's ruling until June 13, 1980, when he was laid off. A few days later, Local 312 filed a grievance on his behalf challenging the June 2 ruling in favor of Maggi. The grievance was submitted directly to the Special Joint Committee which convened again on July 7, 1980. Larry was present and was represented by DiLuzio and Joseph Benson of Local 312. Tamavich represented PTA. Despite DiLuzio's arguments that Burke had been unprepared and that the prior ruling was incorrect, the Special Joint Committee ruled that the collective bargaining agreement precluded it from reconsidering its earlier decision. Accordingly, it denied Larry's grievance. Three months later, Larry commenced this civil action.[2]

### The Merits

To prevail in this action, it is not enough for Larry to establish that his seniority rights were violated. In addition to

---

1. The collective bargaining agreement required that all grievances be made known within ten days of the circumstances giving rise to the grievance. (Answer of PTA to Complaint (Document 8)).

2. Defendants' motion for summary judgment contains an argument that Larry's claims are barred by the statute of limitations. In light of

the Supreme Court's decision in *DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), decided after their motion was filed, defendants now concede that this civil action was timely commenced.

establishing a breach of the collective bargaining agreement, Larry bears the burden of proving that Local 312 breached its duty to fairly represent him in connection with the grievance proceeding. *DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983); *Hines v. Anchor Motor Freight,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). This latter burden is a substantial one for a union breaches its duty of fair representation only when it acts in a "discriminatory, dishonest, arbitrary, or perfunctory fashion." *DelCostello, supra; Vaca v. Sipes,* 386 U.S. 171, 190–91, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967). The union's negligence is insufficient to establish a breach:

> [W]hatever [the "arbitrary or perfunctory" standard] may mean in other circumstances, "[m]ere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct intended to be included within the term 'perfunctory.'" *Findley v. Jones Motor Freight, Etc.,* 639 F.2d 953, 960 & n. 2 (3d Cir.1981). *See Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3d Cir.1970). What is required is a showing of actual bad faith or arbitrary conduct. The fact that trained counsel would have avoided the error or pursued a different strategy is not enough. *Findley v. Jones Motor Freight, Etc., supra,* 639 F.2d at 955, 961.

*Riley v. Letter Carriers Local No. 380,* 668 F.2d 224, 228 (3d Cir.1981).

PTA argues initially that it is entitled to summary judgment because there is no evidence to support the claim that Local 312 breached its duty of fair representation. PTA maintains that, even when all reasonable inferences from the record are drawn in favor of Larry, his complaint at most amounts only to a claim of dissatisfaction with his union's performance. I agree.

██ There is absolutely no evidence of record to support a claim that Local 312 acted with animosity toward Larry or discriminated against him. Indeed, Larry admitted at his deposition that he was neither discriminated against nor subjected to hostile treatment by Local 312.[3] Counsel for Larry, nevertheless, contends that Local 312 acted in an arbitrary and perfunctory manner by: (1) accepting Maggi's grievance after the union had "agreed" with PTA during the March 1980 grievance meeting that Larry should be placed ahead of Maggi on the Eaton seniority list; (2) pressing that grievance before the Special Joint Committee on June 2, 1980 without affording Larry either notice or an opportunity to be heard; and (3) allowing Burke, who was unfamiliar with the facts of the dispute between Larry and Maggi, to appear on behalf of the union at the June 2 hearing.

Undeniably, Local 312 made mistakes in attempting to balance its conflicting obligations to Larry and Maggi. However, all of the evidence of record points to a single conclusion—Local 312 attempted in good faith to take a neutral position on the dispute between Larry and Maggi. Contrary to Larry's argument, Local 312 never agreed with PTA that Larry should have been placed ahead of Maggi on the Eaton seniority list. DiLuzio's testimony at the July 7, 1980 hearing before the Special Joint Committee is unambiguous on this point. Although DiLuzio may have believed personally in the merits of Larry's position, he explained to the Special Joint Committee at least five times that the union would not take sides in a seniority dispute between two employees, and that it was PTA who unilaterally determined after the March 1980 meeting that Larry should be given seniority over Maggi.[4] Local 312 did not, therefore, act arbitrarily in accepting Maggi's grievance. Absent an agreement at the local level, either party to the collective bargaining agreement had the right to invoke the higher levels of the grievance machinery. Local 312's good

---

**3.** Joseph Larry N.T. (Document 67) at 95–96 & 100–108.

**4.** Special Joint Committee Hearing of July 7, 1980 (Document 49), N.T. at 6–12, 18–19.

faith exercise of that right can hardly be construed as a breach of its duty of fair representation.

Although Local 312 would have been better advised to have given Larry notice of the time and place of the June 2, 1980 hearing, I cannot conclude that it breached its duty of fair representation by failing to do so. Larry's interests were admittedly at stake at the Special Joint Committee hearing, but Maggi was the grievant. Furthermore, Larry knew that a grievance had been filed on Maggi's behalf following his layoff, but Larry never did anything to keep abreast of the status of that grievance. *See Fox v. Mitchell Transport, Inc.,* 506 F.Supp. 1346, 1354 (D.Md.1981). More importantly, there is nothing to show that Larry was prejudiced by the lack of notice. Tamavich apprised the Special Joint Committee of the facts in support of Larry's position. Those facts were never disputed. Instead the Special Joint Committee decided the matter on the ground that Larry did not timely file a grievance after learning of the violation of his seniority rights. Hence, even assuming that Local 312 acted arbitrarily in failing to notify Larry of the June 2, 1980 hearing, Larry has not shown that the union's failure "contribute[d] to the erroneous outcome of the contractual proceedings." *Hines v. Anchor Motor Freight, supra,* 424 U.S. at 568, 96 S.Ct. at 1058.

Similarly, I am not persuaded that Burke's appearance at the June 2, 1980 hearing constituted arbitrary and perfunctory conduct by Local 312. Burke was president of the local and presumably was as familiar with the contract as DiLuzio. Burke's familiarity with the circumstances of the seniority dispute may have been less than DiLuzio's, but this is understandable since Burke was asked to substitute for DiLuzio on the eve of the hearing. Whatever shortcomings there may have been in Burke's presentation, however, did not af-

fect the outcome of the hearing. The Special Joint Committee was presented with the material facts and made a decision on that basis. That decision is supported by the language of the collective bargaining agreement and cannot be upset merely because of Larry's dissatisfaction with his union. *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519, 526 (3d Cir.1973).

Hindsight may indicate that Local 312's representation of Larry fell below that standard which we normally would expect of an attorney. But, "[i]t would be unrealistic to require workers 'grieving' on a part-time basis to come up to some judicially devised standard of competent representation akin to that required of lawyers on pain of being found to have committed professional malpractice." *Dober v. Roadway Express, Inc.,* 707 F.2d 292, 294–95 (7th Cir.1983). Thus, all that is required is that the union act in a good faith, non-arbitrary, and non-discriminatory manner. Because no material issue of fact exists as to whether that standard was met in this case, PTA's motion for summary judgment will be granted.[5]

*Link and Tamavich*

■ Since Larry cannot establish that Local 312 breached its duty of fair representation, the Special Joint Committee's decision of June 2, 1980 is final and binding. Therefore, Larry is collaterally estopped from litigating in this court that Link and Tamavich tortiously interfered with his seniority rights. *Wilkes-Barre Publishing Co. v. Newspaper Guild,* 647 F.2d 372, 383 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). Even apart from the doctrine of collateral estoppel, there are alternative reasons for entering summary judgment in favor of Link and Tamavich.

■ The record on this motion discloses that Link's total involvement in this case

---

5. Local 312 has not joined in PTA's motion for summary judgment. Since my disposition of this motion in effect adjudicates the claim against Local 312 as well, I will entertain a timely motion from the union.

stems from his service as a member of the Special Joint Committee. In this role, he is clothed with absolute arbitral immunity. *Cahn v. International Ladies' Garment Union,* 311 F.2d 113, 115 (3d Cir.1962) (per curiam). Larry's unsupported suggestion that Link may have exceeded the scope of his immunity is insufficient to raise an issue of fact.

■ The sole claim against Tamavich is that he tortiously interfered with Larry's rights under the agreement between PTA and Local 312. Tamavich points out that he is a corporate officer of PTA and, as such, he argues that he cannot be held liable for tortiously interfering with the corporation's contractual obligations. I agree. As I explained in my earlier opinion, *see Larry v. Penn Truck Aids, Inc., supra,* 94 F.R.D. at 723, the claim for tortious interference with a collective bargaining agreement arises under federal common law and falls within the court's jurisdiction under § 301 of the NLRA, 29 U.S.C. § 185. *Wilkes-Barre Publishing Co. v. Newspaper Guild, supra,* at 381. Thus federal law must be looked to in order to determine whether Tamavich can be liable for tortious interference with his principal's collective bargaining agreement. Existing federal law, however, provides little guidance in this area. It is certain that individual union members, acting on behalf of their union, are immune under § 301(b), 29 U.S.C. § 185(b), from damage liability for tortiously interfering with a collective bargaining agreement between their union and the plaintiff. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 248–49, 82 S.Ct. 1318, 1324–25, 8 L.Ed.2d 462 (1962); *Wilkes-Barre Publishing Co. v. Newspaper Guild, supra,* at 377. Although the *Atkinson ratio decidendi* would not seem to support it, *Atkinson* has been cited for the broader proposition that individuals generally, with the exception of the employer who is an individual, cannot be made parties to a cause of action for breach of contract under § 301. *Spielmann v. Anchor Motor Freight, Inc.,* 551 F.Supp. 817, 820 n.

2 (S.D.N.Y.1982); *Hall v. Pacific Maritime Association,* 281 F.Supp. 54, 61 (N.D.Cal. 1968). In the absence of any binding federal authority, "state law, if compatible with the § 301, may be resorted to in order to find the rule that will best effectuate federal policy." *Wilkes-Barre Publishing Co. v. Newspaper Guild, supra,* 647 F.2d at 381 (quoting *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957)). The prevailing view under state law is that "officers or employees of a corporation are not personally liable for interference with, or inducing breach of, a corporation contract, if the action was taken in good faith and for the benefit of the corporation." 3 W. Fletcher, *Cyclopedia of the Law of Private Corporations,* § 1001 (1975) (footnote omitted). This approach is compatible with federal labor policy. The aggrieved party already has a claim against the corporate principal for breaching the collective bargaining agreement. Where the individual agent of the corporation is acting in the best interest of his principal, nothing is gained by recognizing, in addition, a cause of action against the individual for inducing the breach. Recognition of this sort of claim, on the other hand, transforms every simple breach of contract action into a claim for tortious interference, with its attendant claim for punitive damages. More importantly, it creates a needless interference with the individual's exercise of judgment on behalf of his corporate principal.

■ On the record presented by this motion there is no room for even the inference that Tamavich was not acting in the best interest of PTA. The transcripts of the hearings before the Special Joint Committee establish that Tamavich, on behalf of PTA, agreed with Local 312 to an informal settlement of Larry's initial grievance and reinstated Larry to a position of seniority over Maggi. Thereafter, when Maggi grieved that action to the Special Joint Committee, Tamavich attempted to inform the Committee of the justification for the

settlement. When the Special Joint Committee ruled in favor of Maggi, Tamavich had no choice but to abide by that decision and lay Larry off. In the face of this evidence, Larry cannot rest on his bare allegation that Tamavich made a secret deal with Local 312 to deprive him of his seniority rights.

Accordingly, summary judgment will be entered in favor of Link and Tamavich on Larry's claim for tortious interference with his rights under the collective bargaining agreement.