**Zollie HUGGINS**

v.

**TEAMSTERS LOCAL 312, Penn Truck Aids, Inc., Stanley Tamavich, and E.I. DuPont de Nemours.**

**Civ. A. No. 82–2005.**

United States District Court, E.D. Pennsylvania.

March 14, 1984.

Anthony M. DiMassa, Philadelphia, Pa., for plaintiff.

Francis M. Milone, Philadelphia, Pa., for defendant Penn Truck Aids, Inc. and Stanley Tamavich.

Stanley B. Gruber, Philadelphia, Pa., for defendant Teamsters Local # 312.

### MEMORANDUM AND ORDER

KELLY, District Judge.

Presently before the court is defendant's motion for summary judgment pursuant to the Federal Rules of Civil Procedure, Rule 56(b). Defendant contends there are, after the completion of discovery, no remaining genuine issues of material fact in this litigation.

Penn Truck Aids, Inc. (PTA) is engaged in the business of supplying truck drivers

to various customers on an independent contractor basis. Two types of drivers are supplied. Casual drivers are assigned to drive for PTA's customers on a temporary, as needed, basis. Regular drivers are assigned to drive for designated customers of PTA on a steady basis. The customers relevant to this suit are DuPont and Eaton Corporation who use both regular and casual drivers.

A collective bargaining agreement between PTA and Local 312 sets forth the terms and conditions of employment of the PTA drivers assigned to DuPont and Eaton. The agreement applicable to the instant action was effective between April 1, 1979 and March 31, 1982. The pertinent part, Article 5, Section 1 of that agreement provides that "seniority rights shall prevail." Article 5, Section 2 specifically provides that:

> *Customer seniority* as measured by the length of service with such customer at the same locations *shall prevail* except in those instances where the employer and union involved agree to the contrary. (emphasis added).

The contract also provides in Article 7 for the resolution of all controversies through the grievance and arbitration procedure.

Plaintiff was hired by PTA on July 17, 1971, became a member of Local 312, and was thereafter assigned to Acme Hardesty, a customer of PTA, as a regular driver. In November, 1979, Acme terminated its contract with PTA. Plaintiff was thereafter assigned to work for other customers as a casual driver. On February 7, 1980, plaintiff received an assignment to drive for DuPont as a regular driver. On August 30, 1980, plaintiff was laid off from that assignment, and was thereafter assigned to the casual list. Plaintiff did not grieve the DuPont layoff.

In the latter part of 1980, certain PTA drivers were recalled to work as regular drivers to the DuPont account in accordance with their customer seniority. In January, 1981, those employees who had been regular drivers for DuPont were recalled to "rebid" various work assignments for Du-Pont. Plaintiff was not recalled to DuPont as a regular nor to bid on work assignments as his customer seniority at DuPont was not as great as the customer seniority of the drivers who were recalled and/or were eligible to rebid.

On March 3, 1981, plaintiff filed a grievance with Local 312 wherein he contended that PTA had violated the collective bargaining agreement by failing to recall him to the DuPont seniority list, and in not permitting him to participate in the job bidding process at DuPont. Plaintiff's union representative, Mr. DiLuzio, recognizing the distinction between customer seniority and total length of service as an employee of PTA, declined to proceed with the grievance since he found no merit to it. Mr. DiLuzio had recently handled an almost identical grievance under the same contract, which had been denied after a hearing by the joint committee created by the collective bargaining agreement. Although plaintiff disagrees with Mr. DiLuzio's conclusion that the grievance lacked merit, he admits that Mr. DiLuzio's actions were in good faith. Mr. DiLuzio informed Huggins that he was not going to pursue the grievance a month or two after the grievance was submitted on March 3, 1981.

Plaintiff did not file his Complaint until May 5, 1982, more than one year after the grievance. Plaintiff's cause of action with respect to the grievance filed on March 3, 1981 is barred by the six-month statute of limitations appropriate to actions brought under § 301(a) of the National Labor Relations Act, 29 U.S.C. § 185(a) prescribed by section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), *DelCostello v. International Brotherhood of Teamsters, et al.*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Larry v. Penn Truck Aids, Inc.*, 567 F.Supp. 1410, 1413 n. 2 (1983). Therefore, plaintiff's cause of action must be dismissed.

In plaintiff's supplemental response to defendants' motion for summary judgment, plaintiff alleges an entirely new cause of action not founded upon the allegations in his Complaint. Plaintiff alleges that a co-

employee, Gary Troupe, was hired by defendant PTA on May 14, 1977, and was assigned to a PTA customer, Shell Chemical on August 18, 1978. And that sometime between August, 1980, and January, 1981, Mr. Troupe was discharged from Shell Chemical and returned to the casual list and soon thereafter Mr. Troupe was assigned to another customer, Eaton Corporation in Philadelphia before other employees on the casual list with more seniority. Plaintiff contends he was never notified nor given an opportunity to bid on the assignment to Eaton Corporation.

In January, 1982, another PTA driver on the casual list immediately below the plaintiff, John L. Wade, Sr., became aware of Mr. Troupe's assignment to Eaton Corporation and filed a written grievance to Eaton and the Union concerning such assignment. Mr. Wade's grievance was filed within six months of plaintiff's Complaint. Plaintiff never filed a grievance regarding Mr. Troupe's assignment to Eaton Corporation. Plaintiff's March 3, 1981 grievance only addressed the bidding process at DuPont, and did not address Mr. Troupe's assignment, consequently, plaintiff did not exhaust his contractual remedies under Article 7 of the collective bargaining agreement. *Republic Steel v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Kaferle v. Frederick*, 360 F.2d 536 (3d Cir. 1966); *Aldridge v. Ludwig-Honold Mfg. Co.*, 385 F.Supp. 695 (E.D.Pa.1974).

Plaintiffs cites to the recent United States Supreme Court decision in *Clayton v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, et al.*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) as authority for the proposition that an employee need not exhaust internal union remedies before proceeding in suit under Section 301 where the internal union remedies could not result in reactivating plaintiff's grievance and/or could not afford the plaintiff the complete relief and protection sought.

In *Clayton* the employee had been discharged for a violation of his employer's plant rule prohibiting misbehavior. The employee asked the union representative to file a grievance on his behalf which grievance the union pursued through the third step of the grievance procedure. At this stage the union withdrew its arbitration request and notified the employee of their decision. Instead of appealing the union's decision to exhaust his remedies, the employee filed suit in the Federal District Court alleging that the union breached its duty of fair representation.

There is no analogy to *Clayton* in the facts at bar. Here plaintiff never initiated the grievance procedure whereas Clayton made three attempts to resolve his discharge by the established procedure.

In light of the foregoing this Complaint is dismissed pursuant to Federal Rule of Civil Procedure, Rule 56(e) which provides that:

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial.

Although I have not dismissed plaintiff's Complaint solely for his failure to submit sufficient supporting affidavits, I am not satisfied that plaintiff has furnished sufficient affidavits to support his position. The Rule further provides that if a party does not so respond "summary judgment, if appropriate, shall be entered against him."

The United States Supreme Court has noted that a party will not survive a motion for summary judgment simply on the "basis of the allegations of their Complaint, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations...." *First National Bank of Arizona v. Citizens Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

The Third Circuit has held that mere inferences, conjecture, speculation or suspi-

cion are insufficient to establish a material fact upon which to base a denial of summary judgment. *Robin Construction Co. v. United States*, 345 F.2d 610 (3d Cir.1965).